# HOBBIE *v.* UNEMPLOYMENT APPEALS COMMISSION OF FLORIDA ET AL.

No. 85–993.   Argued December 10, 1986—Decided February 25, 1987

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MAR-SHALL, BLACKMUN, O'CONNOR, and SCALIA, JJ., joined. POWELL, J., *post*, p. 146, and STEVENS, J., *post*, p. 147, filed opinions concurring in the judgment. REHNQUIST, C. J., filed a dissenting statement, *post*, p. 146.

*Walter E. Carson* argued the cause for appellant. With him on the briefs were *Mitchell A. Tyner* and *Frank M. Palmour.*

*John D. Maher* argued the cause and filed a brief for appellee Unemployment Appeals Commission.*

JUSTICE BRENNAN delivered the opinion of the Court.

Appellant's employer discharged her when she refused to work certain scheduled hours because of sincerely held religious convictions adopted after beginning employment. The question to be decided is whether Florida's denial of unemployment compensation benefits to appellant violates the Free Exercise Clause of the First Amendment of the Constitution, as applied to the States through the Fourteenth Amendment.[1]

---

*Briefs of *amici curiae* urging reversal were filed for The American Jewish Congress et al. by *Ronald A. Krauss, Marc D. Stern,* and *Jack D. Novik;* for the Baptist Joint Committee on Public Affairs et al. by *Donald R. Brewer;* for the Catholic League for Religious and Civil Rights by *Steven Frederick McDowell;* for the Council on Religious Freedom by *Lee Boothby, James M. Parker,* and *Robert W. Nixon;* and for the Rutherford Institute et al. by *W. Charles Bundren, James J. Knicely, Alfred J. Lindh,* and *William B. Hollberg.*

*Solicitor General Fried, Assistant Attorney General Reynolds, Deputy Solicitor General Ayer, Deputy Assistant Attorney General Carvin,* and *Roger Clegg* filed a brief for the United States as *amicus curiae.*

[1] An employer's duty to accommodate the religious beliefs of employees is governed by Title VII of the Civil Rights Act of 1964. 42 U. S. C. § 2000e *et seq.* Hobbie has not sought relief pursuant to Title VII in this action.

I

Lawton and Company (Lawton), a Florida jeweler, hired appellant Paula Hobbie in October 1981. She was employed by Lawton for 2½ years, first as a trainee and then as assistant manager of a retail jewelry store. In April 1984, Hobbie informed her immediate supervisor that she was to be baptized into the Seventh-day Adventist Church and that, for religious reasons, she would no longer be able to work on her Sabbath, from sundown on Friday to sundown on Saturday.[2] The supervisor devised an arrangement with Hobbie: she agreed to work evenings and Sundays, and he agreed to substitute for her whenever she was scheduled to work on a Friday evening or a Saturday.

This arrangement continued until the general manager of Lawton learned of it in June 1984. At that time, after a meeting with Hobbie and her minister, the general manager informed appellant that she could either work her scheduled shifts or submit her resignation to the company. When Hobbie refused to do either, Lawton discharged her.

On June 4, 1984, appellant filed a claim for unemployment compensation with the Florida Department of Labor and Employment Security. Under Florida law, unemployment compensation benefits are available to persons who become "unemployed through no fault of their own." Fla. Stat. § 443.021 (1985). Lawton contested the payment of benefits on the ground that Hobbie was "disqualified for benefits" because she had been discharged for "misconduct connected with [her] work." § 443.101(1)(a).[3]

---

[2] It is undisputed that appellant's conversion was bona fide and that her religious belief is sincerely held. See Record 70, 100.

[3] The Florida statute defines "misconduct" as follows:

"'Misconduct' includes, but is not limited to, the following, which shall not be construed in pari materia with each other:

"(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or

A claims examiner for the Bureau of Unemployment Compensation denied Hobbie's claim for benefits, and she appealed that determination. Following a hearing before a referee, the Unemployment Appeals Commission (Appeals Commission) affirmed the denial of benefits, agreeing that Hobbie's refusal to work scheduled shifts constituted "misconduct connected with [her] work." App. 3.

Hobbie challenged the Appeals Commission's order in the Florida Fifth District Court of Appeal. On September 10, 1985, that court summarily affirmed the Appeals Commission.[4] We postponed jurisdiction, 475 U. S. 1117 (1985), and we now reverse.[5]

## II

Under our precedents, the Appeals Commission's disqualification of appellant from receipt of benefits violates the Free Exercise Clause of the First Amendment, applicable to the

---

"(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." Fla. Stat. § 443.036(24) (1985).

[4] The Fifth District Court of Appeal issued an order stating: "PER CURIAM. AFFIRMED." App. 6. See 475 So. 2d 711 (1985). Under Florida law, a *per curiam* affirmance issued without opinion cannot be appealed to the State Supreme Court. See Fla. Rule App. Proc. 9.030(a)(2)(A)(i–iv). Hobbie therefore sought review directly in this Court.

[5] The parties initially disagreed about whether an appeal lay under 28 U. S. C. § 1257(2). The Appeals Commission maintained that the decision of the Fifth District Court of Appeal did not draw into question the constitutionality of the state statute and, therefore, that an appeal did not lie. See Motion to Dismiss or Affirm 7–11. However, the Appeals Commission now concedes that the appeal is proper. Brief for Appellee Appeals Commission 4–6. See R. Stern, E. Gressman, & S. Shapiro, Supreme Court Practice 112 (6th ed. 1986) (appeal lies under 28 U. S. C. § 1257(2) even if the state court has not been explicit in its rejection of the constitutional claim raised); cf. *Lawrence* v. *State Tax Comm'n*, 286 U. S. 276, 282–283 (1932).

States through the Fourteenth Amendment.[6]  *Sherbert* v.
*Verner*, 374 U. S. 398 (1963); *Thomas* v. *Review Bd. of Indiana Employment Security Div.*, 450 U. S. 707 (1981).  In
*Sherbert* we considered South Carolina's denial of unemployment compensation benefits to a Sabbatarian who, like
Hobbie, refused to work on Saturdays.  The Court held that
the State's disqualification of Sherbert

> "force[d] her to choose between following the precepts of
> her religion and forfeiting benefits, on the one hand, and
> abandoning one of the precepts of her religion in order to
> accept work, on the other hand.  Governmental imposition of such a choice puts the same kind of burden upon
> the free exercise of religion as would a fine imposed
> against [her] for her Saturday worship."  374 U. S., at
> 404.

We concluded that the State had imposed a burden upon
Sherbert's free exercise rights that had not been justified by
a compelling state interest.

In *Thomas*, too, the Court held that a State's denial of
unemployment benefits unlawfully burdened an employee's
right to free exercise of religion.  Thomas, a Jehovah's Witness, held religious beliefs that forbade his participation in
the production of armaments.  He was forced to leave his job
when the employer closed his department and transferred
him to a division that fabricated turrets for tanks.  Indiana
then denied Thomas unemployment compensation benefits.
The Court found that the employee had been "put to a choice
between fidelity to religious belief or cessation of work" and
that the coercive impact of the forfeiture of benefits in this
situation was undeniable:

> "'Not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of

---

[6] See *Cantwell* v. *Connecticut*, 310 U. S. 296 (1940); *Illinois ex rel.
McCollum* v. *Board of Education*, 333 U. S. 203 (1948).

. . . religion, but the pressure upon [the employee] to forego that practice is unmistakable.'" *Thomas, supra,* at 717 (quoting *Sherbert, supra,* at 404).

We see no meaningful distinction among the situations of Sherbert, Thomas, and Hobbie. We again affirm, as stated in *Thomas:*

> "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, *or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs,* a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." 450 U. S., at 717–718 (emphasis added).

Both *Sherbert* and *Thomas* held that such infringements must be subjected to strict scrutiny and could be justified only by proof by the State of a compelling interest. The Appeals Commission does not seriously contend that its denial of benefits can withstand strict scrutiny; rather it urges that we hold that its justification should be determined under the less rigorous standard articulated in Chief Justice Burger's opinion in *Bowen* v. *Roy,* 476 U. S. 693, 707–708 (1986): "[T]he Government meets its burden when it demonstrates that a challenged requirement for governmental benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest." Five Justices expressly rejected this argument in *Roy.* See *id.,* at 715–716 (BLACKMUN, J., concurring in part); *id.,* at 728 (O'CONNOR, J., joined by BRENNAN and MARSHALL, JJ., concurring in part and dissenting in part); *id.,* at 733 (WHITE, J., dissenting). We reject the argument again today. As JUSTICE O'CONNOR pointed out in *Roy,* "[s]uch a test has no basis in precedent and relegates a serious First Amendment value to the barest level of minimal scrutiny that the Equal Protection

Clause already provides." *Id.*, at 727. See also *Wisconsin v. Yoder*, 406 U. S. 205, 215 (1972) ("[O]nly those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion").[7]

The Appeals Commission also suggests two grounds upon which we might distinguish *Sherbert* and *Thomas* from the present case. First, the Appeals Commission points out that in *Sherbert* the employee was deemed completely ineligible for benefits under South Carolina's unemployment insurance scheme because she would not accept work that conflicted with her Sabbath. The Appeals Commission contends that,

---

[7] In *Bowen* v. *Roy*, 476 U. S. 693 (1986), the Court considered a free exercise challenge to the statutory requirement that a Social Security number be supplied by any applicant seeking certain welfare benefits. In his opinion Chief Justice Burger expressly reaffirmed *Sherbert* v. *Verner*, 374 U. S. 398 (1963), and *Thomas* v. *Review Bd. of Indiana Employment Security Div.*, 450 U. S. 707 (1981), and distinguished those cases from *Roy*. He observed that the statutes at issue in *Sherbert* and *Thomas* provided:

"[A] person was not eligible for unemployment compensation benefits if, 'without good cause,' he had quit work or refused available work. The 'good cause' standard created a mechanism for individualized exemptions. If a state creates such a mechanism, its refusal to extend an exemption to an instance of religious hardship suggests a discriminatory intent. Thus, as was urged in *Thomas*, to consider a religiously motivated resignation to be 'without good cause' tends to exhibit hostility, not neutrality, towards religion. . . . In those cases, therefore, it was appropriate to require the State to demonstrate a compelling reason for denying the requested exemption." 476 U. S., at 708 (citations omitted).

Thus, even if the Court had accepted the reasoning of the Chief Justice's opinion in *Roy*—which it did not—we would apply strict scrutiny in this case. Although the purpose of the statute is to provide benefits to those persons who become "unemployed through no fault of their own," Fla. Stat. § 443.021 (1985), Florida nonetheless views a religiously motivated choice which leads to dismissal as "misconduct connected with . . . work." § 443.101. This scheme—which labels and penalizes behavior dictated by religious belief as intentional misconduct—exhibits greater hostility toward religion than one deeming such resignations to be "without good cause."

under Florida law, Hobbie faces only a limited disqualification from receipt of benefits,[8] and that once this fixed term has been served, she will again "be on an equal footing with all other workers, provided she avoids employment that conflicts with her religious beliefs." Brief for Appellee Appeals Commission 12. The Appeals Commission argues that such a disqualification provision is less coercive than the ineligibility determination in *Sherbert*, and that the burden it imposes on free exercise is therefore permissible.

This distinction is without substance. The immediate effects of ineligibility and disqualification are identical, and the disqualification penalty is substantial. Moreover, *Sherbert* was given controlling weight in *Thomas*, which involved a disqualification provision similar in all relevant respects to the statutory section implicated here. See *Thomas*, 450 U. S., at 709–710, n. 1.

The Appeals Commission also attempts to distinguish this case by arguing that, unlike the employees in *Sherbert* and *Thomas*, Hobbie was the "agent of change" and is therefore responsible for the consequences of the conflict between her job and her religious beliefs. In *Sherbert* and *Thomas*, the employees held their respective religious beliefs at the time of hire; subsequent changes in the conditions of employment made *by the employer* caused the conflict between work and belief. In this case, Hobbie's beliefs changed during the course of her employment, creating a conflict between job and faith that had not previously existed. The Appeals Commission contends that "it is . . . unfair for an employee to

---

[8] When an employee voluntarily leaves a position without good cause attributable to the employer, he or she is disqualified from receipt of benefits for the week of the departure and until he or she becomes reemployed and earns 17 times the weekly benefit amount. § 443.101(1)(a)(1). The penalty for discharge due to misconduct connected with work—the relevant provision here—is identical to that for voluntary departure, except that an *additional* penalty of a specified number of weeks may be added depending upon the severity of the employee's offense. § 443.101(1)(a)(2).

adopt religious beliefs that conflict with existing employment and expect to continue the employment without compromising those beliefs" and that this "intentional disregard of the employer's interests . . . constitutes misconduct." Brief for Appellee Appeals Commission 20–21.

In effect, the Appeals Commission asks us to single out the religious convert for different, less favorable treatment than that given an individual whose adherence to his or her faith precedes employment. We decline to do so. The First Amendment protects the free exercise rights of employees who adopt religious beliefs or convert from one faith to another after they are hired.[9] The timing of Hobbie's conversion is immaterial to our determination that her free exercise rights have been burdened; the salient inquiry under the Free Exercise Clause is the burden involved. In *Sherbert*, *Thomas*, and the present case, the employee was forced to choose between fidelity to religious belief and continued employment; the forfeiture of unemployment benefits for choosing the former over the latter brings unlawful coercion to bear on the employee's choice.

Finally, we reject the Appeals Commission's argument that the awarding of benefits to Hobbie would violate the Establishment Clause. This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the

---

[9] Cf. *United States* v. *Ballard*, 322 U. S. 78, 87 (1944) (In applying the Free Exercise Clause, courts may not inquire into the truth, validity, or reasonableness of a claimant's religious beliefs); *Callahan* v. *Woods*, 658 F. 2d 679, 687 (CA9 1981) ("If judicial inquiry into the truth of one's religious beliefs would violate the free exercise clause, an inquiry into one's reasons for adopting those beliefs is similarly intrusive. So long as one's faith is religiously based at the time it is asserted, it should not matter, for constitutional purposes, whether that faith derived from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible") (citation omitted).

Establishment Clause.[10]  See, *e. g.*, *Wisconsin* v. *Yoder*, 406 U. S. 205 (1972) (judicial exemption of Amish children from compulsory attendance at high school); *Walz* v. *Tax Comm'n*, 397 U. S. 664 (1970) (tax exemption for churches).  As in *Sherbert*, the accommodation at issue here does not entangle the State in an unlawful fostering of religion:

> "In holding as we do, plainly we are not fostering the 'establishment' of the Seventh-day Adventist religion in South Carolina, for the extension of unemployment benefits to Sabbatarians in common with Sunday worshipers reflects nothing more than the governmental obligation of neutrality in the face of religious differences, and does not represent the involvement of religious with secular institutions which it is the object of the Establishment Clause to forestall."  374 U. S., at 409.[11]

---

[10] In the unemployment benefits context, the majorities *and* those dissenting have concluded that, were a State voluntarily to provide benefits to individuals in Hobbie's situation, such an accommodation would not violate the Establishment Clause.  See *Thomas*, 450 U. S., at 719–720 (quoting *Sherbert*, 374 U. S., at 409); 450 U. S., at 723 (REHNQUIST, J., dissenting); *Sherbert*, *supra*, at 422–423 (Harlan, J., dissenting).

[11] The Appeals Commission contends that this Court's recent decision in *Estate of Thornton* v. *Caldor, Inc.*, 472 U. S. 703 (1985), reveals that the accommodation sought by Hobbie would constitute an unlawful establishment of religion.  In *Thornton*, we held that a Connecticut statute that provided employees with an absolute right not to work on their Sabbath violated the Establishment Clause.  The Court determined that the State's "unyielding weighting in favor of Sabbath observers over all other interests . . . ha[d] a primary effect that impermissibly advance[d] a particular religious practice," *id.*, at 710, and placed an unacceptable burden on employers and co-workers because it provided no exceptions for special circumstances regardless of the hardship resulting from the mandatory accommodation.

In contrast, Florida's provision of unemployment benefits to religious observers does not single out a particular class of such persons for favorable treatment and thereby have the effect of implicitly endorsing a particular religious belief.  Rather, the provision of unemployment benefits generally available within the State to religious observers who must leave their employment due to an irreconcilable conflict between the demands of work

## III

We conclude that Florida's refusal to award unemployment compensation benefits to appellant violated the Free Exercise Clause of the First Amendment. Here, as in *Sherbert* and *Thomas*, the State may not force an employee "to choose between following the precepts of her religion and forfeiting benefits, . . . and abandoning one of the precepts of her religion in order to accept work." *Sherbert*, 374 U. S., at 404. The judgment of the Florida Fifth District Court of Appeal is therefore

*Reversed.*

CHIEF JUSTICE REHNQUIST, dissenting.

I adhere to the views I stated in dissent in *Thomas* v. *Review Bd. of Indiana Employment Security Div.*, 450 U. S. 707, 720–727 (1981). Accordingly, I would affirm.

JUSTICE POWELL, concurring in the judgment.

The Court properly concludes that *Sherbert* v. *Verner*, 374 U. S. 398 (1963), and *Thomas* v. *Review Bd. of Indiana Employment Security Div.*, 450 U. S. 707 (1981), control the decision in this case. In both of those cases, the Court applied strict scrutiny analysis to a State's decision to deny unemployment benefits to an employee forced to leave a job because of his or her religious convictions. In each of these cases, the Court found that the State's action was not justified by a compelling interest and therefore violated the Free Exercise Clause of the First Amendment. The situation in this case is remarkably similar: The State denied Hobbie unemployment compensation, even though she was forced to leave her job because of sincerely held religious beliefs. As the Court recognizes, there is "no meaningful distinction among the situations of Sherbert, Thomas, and

and conscience neutrally accommodates religious beliefs and practices, without endorsement.

Hobbie." *Ante,* at 141. Accordingly, the established analysis of *Sherbert* and *Thomas* should apply to this case.

This Court's decision last Term in *Bowen* v. *Roy,* 476 U. S. 693 (1986), did nothing to undercut the applicability of *Sherbert* and *Thomas* to the present case. A plurality in *Roy* indicated that "some incidental neutral restraints on the free exercise of religion," such as the requirement that applicants for Social Security benefits use assigned numbers, need not be supported by a compelling justification. 476 U. S., at 712. The plurality distinguished *Sherbert* and *Thomas* as cases where the statute at issue "created a mechanism for individualized exemptions." 476 U. S., at 708. The plurality noted:

> "If a [S]tate creates such a mechanism, its refusal to extend an exemption to an instance of religious hardship suggests a discriminatory intent. . . . In *[Sherbert* and *Thomas]*, therefore, it was appropriate to require the State to demonstrate a compelling reason for denying the requested exemption." *Ibid.*

Thus, the decision in *Roy* makes explicitly clear that its reasoning does not apply to the state conduct in this case.

The Court recognizes in a footnote that the reasoning of *Roy* does not apply to this case. *Ante,* at 142, n. 7. Instead of relying on this distinction, however, the Court reaches out to reject the reasoning of *Roy in toto.* This strikes me as inappropriate and unnecessary. Given its context, the Court's rejection of *Roy*'s reasoning is dictum. The proper approach in this case is to apply the established precedent of *Sherbert* and *Thomas.* Because the Court goes further, I concur only in the judgment.

JUSTICE STEVENS, concurring in the judgment.

As the Court concludes, *ante,* at 141–142, this case is controlled by *Sherbert* v. *Verner,* 374 U. S. 398 (1963), and *Thomas* v. *Review Bd. of Indiana Employment Security Div.,* 450 U. S. 707 (1981). The State of Florida provides

unemployment benefits to those persons who become "unemployed through no fault of their own," Fla. Stat. § 443.021 (1985), but singles out the religiously motivated choice that subjected Paula Hobbie to dismissal as her fault and indeed as "misconduct connected with . . . work." § 443.101. The State thus regards her "religious claims less favorably than other claims," see *Bowen* v. *Roy*, 476 U. S. 693, 707, n. 17 (1986) (STEVENS, J., concurring in part and concurring in result). In such an instance, granting unemployment benefits is necessary to protect religious observers against unequal treatment. See *United States* v. *Lee*, 455 U. S. 252, 264, n. 3 (1982) (STEVENS, J., concurring in judgment). I also agree with the Court's explanation, *ante*, at 142–143, of why the two grounds upon which we might distinguish *Sherbert* and *Thomas* must be rejected. Accordingly, I concur in the judgment.