**Margie FORTE, d/b/a Babes and Dolls, Plaintiff,**

v.

**Gregory L. COLER, as Secretary of the Department of Health and Rehabilitative Services of the State of Florida, et al., etc., Defendants.**

No. 86–219–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

May 22, 1989.

Samuel S. Jacobson, Jacksonville, Fla., for plaintiff.

Jason Vail, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

OPINION

JOHN H. MOORE, II, District Judge.

The above-styled cause is before the Court on the motion of defendants, GREG-

ORY L. COLER, as Secretary of the Department of Health and Rehabilitative Services of the State of Florida (HRS),[1] and Lucy D. Hadi, as District Administrator for District IV of HRS, for judgment on the pleadings pursuant to *Fed.R.Civ.P.* 12(c). On April 24, 1989, the Court heard oral arguments of counsel for the defendants, the counsel of plaintiff, MARGIE FORTE, d/b/a BABES and DOLLS (B & D), and counsel for Florida Association of Christian Colleges and Schools, Inc. (FACCS), appearing in the case as amicus curiae. After due consideration of the pleadings, legal memoranda, oral arguments, and applicable law, the Court now determines that judgment on the pleadings is appropriate.

In determining that judgment on the pleadings is proper, the Court is aware that it must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the plaintiff. *See,* Wright and Miller, Federal Practice and Procedure: Civil § 1368 at 690. Although judgment on the pleadings is a rarely invoked judicial tool, it has utility where, as here, the pleadings are closed, the material allegations of fact are admitted therein, and the only questions remaining to be settled are ones of law.

Plaintiff, B & D, is a child care facility doing business in Jacksonville, Florida, under license issued by HRS pursuant to Florida Statutes § 402.308. B & D filed this suit seeking declaratory and injunctive relief challenging the constitutionality of Florida Statutes § 402.316. That Statute exempts all Florida child care facilities which are an integral part of church or parochial schools from the Florida licensing standards contained in Florida Statutes §§ 402.301–402.319, and the administrative regulations promulgated thereunder. B & D claims that the exemption is an establishment of religion in violation of the First Amendment, and denies equal protection of the laws to child care facilities not religiously sponsored in violation of the Four-

teenth Amendment. B & D also asserts pendent state claims based on the Florida Constitution.

Florida Statutes §§ 402.301–402.319, and the administrative rules promulgated by HRS, are part of a comprehensive regulatory scheme that sets forth detailed safety and health standards Florida child care facilities must meet in order to obtain a license to operate. The detailed standards impose a broad range of requirements relating to personnel, physical facilities, first aid and emergency medical care, communicable disease control, nutrition, food preparation, admission and recordkeeping, night time care, and transportation. Compliance with these standards imposes substantial costs on child care facilities. These costs must be offset by a commensurate increase in enrollment and other charges passed on to child care facilities' customers.

Child care facilities which are an integral part of a church or parochial school do not have to comply with these licensing standards by virtue of an exemption granted them under F.S. § 402.316. That statute provides in relevant part:

402.316. Exemptions

(1) The provisions of ss. 402.301–402.319, except for the requirements regarding screening of child care personnel, shall not apply to a child care facility which is an integral part of church or parochial schools conducting regularly scheduled classes, courses of study, or educational programs accredited by, or by a member of, an organization which publishes and requires compliance with its standards for health, safety, and sanitation. However, such facilities shall meet minimum requirements of the applicable local governing body as to health, sanitation, and safety and shall meet the screening requirements pursuant to ss. 402.305 and 402.3055. Failure by a facility to comply with such screening require-

**1.** When the plaintiff originally filed this lawsuit William J. Page was the Secretary for HRS. Mr. Page resigned that position on January 6, 1987, and was replaced by Gaylen Jungling, who served as Acting Secretary until February 1, 1987. On February 2, 1987, Gregory L. Coler was appointed Secretary of HRS and presently serves in that capacity. *See* Defendants Suggestion for Substitution, filed July 8, 1988.

ments shall result in the loss of the facility's exemption from licensure.

Although such facilities still must comply with minimum local health, sanitation, and safety ordinances and Florida's personnel screening requirements, they are not subject to the broad ranging regulations other child care facilities must conform to and, therefore, they have lower operating costs. As a result of lower operating costs, child care facilities associated with church or parochial schools can charge lower rates to their patrons than non-exempt facilities giving a competitive economic advantage to those religiously affiliated facilities. B & D's business in fact suffers from the competitive disadvantage it has because of its operation as a secular, licensed facility. However, the complaint contains no allegation that any religiously affiliated child care facility exempt from licensure by virtue of § 402.316 is operated on a for-profit basis. Given these facts, the issues the Court must determine are whether the exemption from licensure granted by § 402.316 violates either the Establishment Clause of the First Amendment, or the Equal Protection Clause of the Fourteenth Amendment. The Court will consider these issues in turn.

■ The First Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, prohibits government from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof." Recognizing the natural tension that exists between these two clauses, the Supreme Court has set out a three-part test for analyzing whether a statute violates these prohibitions. *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In *Lemon*, the Court ruled that "the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Id.*, at 612–13, 91 S.Ct. at 2111 (citations omitted).

The continuing vitality of the *Lemon* test was recently reaffirmed by the Court in *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987). However, as the Court's ruling in *Amos* illustrates, the *Lemon* test is not to be mechanically applied. In *Amos*, the issue before the Court was whether Section 702 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1, which exempts religious organizations from Title VII's prohibition against discrimination on the basis of religion, violated the Establishment Clause when applied to a religious entity's secular, nonprofit activities. The Court ruled that it did not.

In so holding, the Court wrote that the first prong of the *Lemon* test was aimed at preventing the relevant government decision maker from acting with the intent to promote a particular point of view in religious matters. The Court concluded that the intention to alleviate significant governmental interference with a religious organization's ability to define and carry out its religious mission was a permissible legislative purpose. Considering the second prong of the *Lemon* analysis, the Court determined that a law would have the forbidden effect of advancing or inhibiting religion only if the government itself was attempting to advance religion through its own activities and influence. Under the third prong of *Lemon*, the Court found that the § 702 exemption, rather than impermissibly entangling church and state, effectuated a more complete separation of the two.

The Fourth Circuit Court of Appeals has recently applied the *Amos* case to resolve a dispute factually on point with the case under consideration here. In *Forest Hills Early Learning Ctr. v. Grace Bap. Ch.*, 846 F.2d 260 (4th Cir.1988), the Court had before it a challenge to a Virginia statute which exempted religiously affiliated child care facilities from state licensing requirements. The Court held that such an exemption did not violate the Establishment Clause. The *Forest Hills* case, although not controlling precedent, is highly persuasive.

Similarly, here, the Court concludes that Florida Statute § 402.316 passes muster

under *Lemon*, as explained by *Amos*. The statute easily satisfies the first part of the *Lemon* test. It is clear from the language of the statute that the Florida legislature is not attempting to promote a particular religious viewpoint. The exemption statute does not distinguish between child care facilities associated with the Catholic Church, the Baptist Church, the Methodist Church, or make any type of denominational preference. It merely provides that a child care facility is exempt if it is "an integral part of church or parochial schools." In addition, § 402.301(5) provides "[i]t is the further legislative intent that the freedom of religion of all citizens shall be inviolate." This statutory expression evidences Florida's intention to refrain from imposing governmental regulation, avoiding any interference with the ability of religious organizations to define and carry out their mission. This is a permissible and sufficient legislative purpose. *Amos* 107 S.Ct. at 2868.

The exemption also passes under the second prong of the *Lemon* analysis. Simply because religious organizations are afforded an economic advantage over secular child care facilities does not mean that the law has "a principal or primary effect" that advances religion. Florida, rather than advancing religion through its own activities and influence, is simply allowing for an accommodation of the free exercise of religion by permitting exemption from licensure. As the Court noted in *Amos*, "religious groups have been better able to advance their purposes on account of many laws that have passed constitutional muster." *Id.* at 2868. *See, e.g., Walz v. Tax Comm'n*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *Board of Education v. Allen*, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). It is well established "'that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.'" *Amos*, at 2867; quoting *Hobbie v. Unemployment*

*Appeals Comm'n of Fla.*, 480 U.S. 136, 107 S.Ct. 1046, 1051, 94 L.Ed.2d 190 (1987) (footnote omitted).

The statute also satisfies the final part of the *Lemon* test because it does not impermissibly entangle church and state. Rather, it accomplishes a more complete separation of the two. By exempting child care facilities that are an integral part of church or parochial schools from compliance with state licensing requirements the state is removing the potential for "burdensome issue-by-issue free exercise litigation that would be necessary absent a general exemption." *Forest Hills*, at 264.

■ Finally, B & D has failed to make out a claim under the Fourteenth Amendment Equal Protection Clause. As the Court has previously noted, the challenged statute is motivated by the permissible purpose of limiting governmental interference with the free exercise of religion. Thus, the proper focus is whether Florida has chosen a rational classification to further this legitimate end. As the Court concluded with the § 702 exemption in *Amos*, this Court also concludes that the legislative exemption contained in § 402.316 is "rationally related to the legitimate purpose of alleviating significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos*, at 2870.[2]

In accordance with the above, it is now

ORDERED AND ADJUDGED:

That the defendants' motion for judgment on the pleadings is hereby GRANTED, and the Clerk of the Court is hereby directed to enter final judgment in favor of the defendants, GREGORY L. COLER, as Secretary of the Department of Health and Rehabilitative Services of the State of Florida, and LUCY D. HADI, as District Administrator for District IV of the Department of Health and Rehabilitative Services for the State of Florida, and against the

---

**2.** In light of this Court's ruling that plaintiff has failed to state a claim for relief under the Federal Constitution, the plaintiff's state law claims, grounded in alleged violations of the Florida

Constitution, will not be considered. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).