**ROCKY MOUNTAIN OIL & GAS ASSOCIATION, Plaintiff,**

and

**INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, Plaintiff–Intervenor–Appellant,**

v.

**United States Forest Service, an agency of the United States Department of Agriculture; Defendant–Appellee,**

and

**Montana Wilderness Association; Professional Wilderness Outfitters; Back Country Horsemen of Montana; the Wilderness Society, Inc.; Sierra Club; Montana Audubon; National Wildlife Federation; KAA Mo Taan; George Engler, Defendant–Intervenors–Appellees.**

No. 00–35349.

D.C. CV–98–00022–CCL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 2001.

Decided May 3, 2001.

Before THOMPSON, TROTT and PAEZ, Circuit Judges.

## MEMORANDUM *

The Independent Petroleum Association of America ("IPAA") appeals the district court's grant of summary judgment in favor of the U.S. Forest Service. IPAA challenges the Forest Service's decision not to offer particular lands within the Lewis & Clark National Forest for oil and gas leasing, asserting claims under the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4321–4370e (1994 & Supp. IV 1998), National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600, 1611–1614 (1994), Multiple–Use Sustained

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Yield Act ("MUSYA"), 16 U.S.C. §§ 528–531 (1994) and the Establishment Clause. The district court decided in favor of the Forest Service, holding that IPAA lacked standing to sue, and that it failed to establish that the Forest Service's decision was arbitrary, capricious or in violation of any law. We affirm on the basis that IPAA lacks standing to bring its NEPA, NFMA and MUSYA claims, all of which are brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (1994), and that its Establishment Clause claim lacked merit.

■ IPAA lacks Article III standing for its NEPA, NFMA and MUSYA claims because the Forest Service has discretion whether to authorize the leasing of any particular Forest Service lands for mineral exploration. *See* 30 U.S.C. § 226(h) (1994); 36 C.F.R. §§ 219.10–219.12 (2000); 36 C.F.R. § 228.102(e) (2000). Because the statute gives the Forest Service this discretionary power, IPAA has no "right" to bid for leases on any Forest Service land or to compel the Forest Service to authorize leasing of its land for mineral exploration. Lacking such a right, IPAA suffered no injury in fact as a result of the Forest Service's decision not to lease land in the Rocky Mountain Division. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The absence of such a right also forecloses IPAA's argument that it has a procedural right to the proper administration of the various environmental laws. *See id.* at 572 n. 7, 112 S.Ct. 2130. We also note that IPAA lacks prudential standing on its NEPA claims because its interest in enforcing the statute is purely economic, and as such does not fall within NEPA's zone of interests. *See Presidio Golf Club v. Nat'l Park Serv.,* 155 F.3d 1153, 1157–58 (9th Cir.1998).

■ IPAA contends the Forest Supervisor acted arbitrarily, in violation of the APA, in deciding not to lease the land because, in making that decision, she relied upon the Rocky Mountain Division's "value of place." IPAA styles this as an "ultra vires" claim, alleging that the Forest Supervisor acted outside of her authority. We reject this contention. The Forest Supervisor acted within her authority and in a non-arbitrary manner: the psychological effects of an agency's decision may be considered under NEPA, *cf. Metro. Edison Co. v. People Against Nuclear Energy,* 460 U.S. 766, 771–75, 103 S.Ct. 1556, 75 L.Ed.2d 534 (1983), and the Supervisor had a reasoned basis for her decision.

■ In support of its Establishment Clause claim, the IPAA argues that the Forest Service's decision not to lease the land was based on the current use of the land for Native American religious practices. This argument fails. The Forest Service's decision not to lease the land satisfies the three-part test of *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). First, the Forest Service's decision had a secular purpose: the agency considered many secular factors, such as public concern about "value of place," impacts to wildlife and other surface resources, tourism and recreational uses and preservation of options for future use. Second, the primary purpose and effect of the decision not to lease was to protect the Rocky Mountain Division from oil and gas exploration, not to advance Native American religious beliefs. Third, the decision not to lease does not foster excessive entanglement with religion. Moreover, the government may, consistent with the Establishment Clause, accommodate religious practices in its decision-making processes. *See Lyng v. Northwest Indian Cemetery Protective*

*Ass'n,* 485 U.S. 439, 453–54, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988); *Hobbie v. Unempl. Appeals Comm'n of Fla.,* 480 U.S. 136, 144–45, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987).

Nor does the Forest Service's decision violate the endorsement test of the Establishment Clause because, given the many secular considerations cited in the Forest Service's Record of Decision, a "reasonable observer" would not view the decision as an endorsement of religion. *See Capital Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 778–79, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (O'Connor, J., concurring).

AFFIRMED.