**FREEDOM FROM RELIGION FOUNDATION, INC., Anne Nicol Gaylor, Annie Laurie Gaylor and Dan Barker, Plaintiffs,**

v.

**R. James NICHOLSON, Jonathan Perlin, Hugh Maddry, A. Keith Ethridge and Jeni Cook, Defendants.**

No. 06 C 212 S.

United States District Court, W.D. Wisconsin.

Sept. 5, 2006.

Jean Lin, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiffs Freedom From Religion Foundation, Inc., Anne Nicol Gaylor, Annie Laurie Gaylor, and Dan Barker commenced this civil rights action in their capacity as federal taxpayers against defendants R. James Nicholson, Jonathan Perlin, Hugh Maddry, A. Keith Ethridge, and Jeni Cook alleging violations of the Establishment Clause of the First Amendment to the United States Constitution. Plaintiffs seek both declaratory and injunctive relief in this action. Jurisdiction is based on 28 U.S.C. § 1331. The matter is presently before the Court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the purpose of this motion, the following facts relevant to defendants' motion are undisputed.

## BACKGROUND

Plaintiff Freedom From Religion Foundation, Inc. (hereinafter FFRF) is a Wisconsin non-stock corporation with its principal place of business in Madison, Wisconsin. FFRF's declared purpose is to "protect the fundamental constitutional principle of separation of church and state by representing and advocating on behalf of its members." Plaintiffs Anne Nicol Gaylor, Annie Laurie Gaylor, and Dan Barker are federal taxpayers and members of FFRF who reside in Madison, Wisconsin.

Defendant R. James Nicholson is Secretary of the Department of Veterans Affairs (hereinafter VA). Accordingly, defendant Nicholson oversees and maintains responsibility for disbursement of congressional tax appropriations made to the VA including funds disbursed to VA's National Chaplain Center.

Defendant Jonathan Perlin is VA's Undersecretary for Health. Additionally, defendant Perlin serves as Chief Executive Officer of the Veterans Health Administration (hereinafter VHA). Accordingly, he oversees and maintains responsibility for

disbursement of congressional tax appropriations made to the VHA including funds used for integration of chaplain services into the provision of VHA's health care services.

Defendant Hugh Maddry serves as the Director of VA's National Chaplain Center. Accordingly, defendant Maddry oversees and maintains responsibility for disbursement and use of congressional tax appropriations made to VA's National Chaplain Center. Defendant A. Keith Ethridge is the Deputy Director of VA's National Chaplain Center. Accordingly, he is responsible for supervising the Center's staff and managing its operational budget. Defendant Jeni Cook serves on the faculty of VA's National Chaplain Center's Spiritual Health Education Program as its Program Manager of Spiritual Health Initiatives. Accordingly, she is responsible for program development in the areas of spiritual initiatives in health promotion/disease prevention, spiritual initiatives in veterans' homes and their communities, and spiritual care for women veterans.

The VHA is the nation's largest integrated health system with an annual medical care budget exceeding $30 billion dollars. Services provided by VA are funded through annual congressional appropriations (including over $30 billion dollars of taxpayer appropriations) which are used to fund the provision of medical services to veterans through the VHA.

VA has adopted a holistic approach to health care as part of its provision of medical services to veterans. VA's holistic health care protocol is premised upon the belief that "good health care is incomplete without substantively addressing the spiritual dimension of each patient." Accordingly, VA integrates chaplain services into patient medical care because it "intends that the [ ] spiritual dimension of health be substantively integrated into all aspects of patient care."

Under this interdisciplinary approach, VA requires that each patient be provided with a spiritual and pastoral care screening assessment as part of the admissions process. For example, the VA Medical Center in Richmond, Virginia provides its patients with a chaplain spiritual assessment form which states in relevant part as follows:

> Your health has many components (physical, mental, and spiritual). With your consent, the following questions will help your healthcare providers (medical doctors, nurses, chaplains, and others) understand the spiritual component of your life. It is the goal of chaplains to facilitate spiritual health and growth, since research has shown the positive correlation between spiritual health and physical/emotional health and satisfaction.

Accordingly, if a VA chaplain assesses that a patient has a "spiritual injury or sickness" he or she is to then determine those pastoral care interventions which are necessary. Plaintiffs object to disbursement of congressional appropriations for the purpose of supporting integration of faith and spirituality into VA's health care treatment programs (both inpatient and outpatient) because they allege it provides actual and apparent support for government endorsement and advancement of religion.

## MEMORANDUM

Defendants assert the government is obligated to accommodate the religious needs of those under its care and control. Accordingly, defendants assert VA may be required to meet the free exercise demands of veterans who believe that a "holistic model of medical care is necessary to their recovery." Additionally, defendants assert VA chaplains do not

coerce patients into receiving spiritual care and the choice to receive such care always remains a private one for the patient. Finally, defendants argue should VA's provision of spiritual and pastoral care exceed what is demanded by the Free Exercise Clause, integration of such care into VA's interdisciplinary health care program simply serves as benevolent accommodation. Accordingly, defendants argue plaintiffs' complaint fails to state a claim for an Establishment Clause violation and as such their motion to dismiss must be granted.

Plaintiffs acknowledge that VA chaplains can perform religious activities to accommodate the constitutional free exercise rights of hospitalized patients. However, plaintiffs assert constitutional limits on VA chaplains prohibit them from conducting activities that are intended to promote religion over non-religion. Additionally, plaintiffs assert VA chaplains are constitutionally prohibited from providing religious services to persons whose free exercise rights are neither burdened nor restricted. As such, plaintiffs argue that VA's chaplaincy violates the Establishment Clause by incorporating religion into its protocol for delivery of all health care services, by providing chaplain services to outpatients, by completing spiritual assessments of every VA patient, and by publishing prayers for all occasions. Accordingly, plaintiffs assert their complaint states a claim upon which relief can be granted and defendants' motion to dismiss must be denied.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997)(*citing* Fed.R.Civ.P. 12(b)(6)). Dismissal is appropriate only if it appears beyond doubt that plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (citations omitted).

■ When ruling on a motion to dismiss for failure to state a claim courts are generally restricted to an analysis of the complaint. *See Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir.1976) (*citing Grand Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303 (7th Cir. 1956)). However, when a plaintiff attaches an exhibit to its complaint such an exhibit becomes part of the complaint for all purposes and courts can consider it when deciding a motion to dismiss. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir.2002) (citations omitted).

■ Additionally, courts are not required to accept assertions of law or unwarranted factual inferences contained within the complaint when deciding a motion to dismiss. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir.2005)(*citing N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir.1995)). However, courts will accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–978 (7th Cir.1999)(*quoting Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir.1997)). With the standard of review in place, the Court will address defendants' motion to dismiss plaintiffs' complaint which alleges violations of the Establishment Clause.

Religious freedom is a basic tenet of this nation. Many of those who either formed this nation or immigrated here left their homelands to escape religious persecution seeking the right to worship without governmental interference. The First Amendment to the United States Constitution protects religious freedom by providing that "Congress shall make no law re-

specting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

 The first of the two clauses is commonly referred to as the Establishment Clause and it commands a separation of church and state. *Cutter v. Wilkinson,* 544 U.S. 709, 719, 125 S.Ct. 2113, 2120, 161 L.Ed.2d 1020 (2005). The second clause is commonly referred to as the Free Exercise Clause and it mandates government respect for and non-interference with "the religious beliefs and practices of our Nation's people." *Id.* While these two clauses express complementary values they are frequently in tension with one another, *See Locke v. Davey,* 540 U.S. 712, 718, 124 S.Ct. 1307, 1311, 158 L.Ed.2d 1 (2004) (citation omitted), as evidenced by the facts of this action.

The Supreme Court has long recognized that government may (and indeed sometimes must) accommodate religious practices and it can do so without violating the Establishment Clause. *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos,* 483 U.S. 327, 334, 107 S.Ct. 2862, 2867, 97 L.Ed.2d 273 (1987)(*quoting Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 144–145, 107 S.Ct. 1046, 1051, 94 L.Ed.2d 190 (1987)(footnote omitted)). Additionally, it is well-established that "limits of permissible state accommodation to religion are by no means co-extensive with the noninterference mandated by the Free Exercise Clause." *Walz v. Tax Comm'n of the City of New York,* 397 U.S. 664, 673, 90 S.Ct. 1409, 1413–1414, 25 L.Ed.2d 697 (1970). Accordingly, under the First Amendment there is ample "room for play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Id.* at 669, 90 S.Ct. at 1412. However, at some point accommodation may devolve into "an un-

lawful fostering of religion." *Amos,* at 334–335, 107 S.Ct. at 2868 (*quoting Hobbie,* at 145, 107 S.Ct. at 1051).

 Though a variety of approaches have been used to define when state action goes beyond accommodation and in turn violates the Establishment Clause, at the heart of the Establishment Clause is the principle that government, state or federal, should pursue a course of neutrality favoring neither one religion over another nor religion generally to non-religion. *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,* 512 U.S. 687, 696, 114 S.Ct. 2481, 2487, 129 L.Ed.2d 546 (1994) (citations omitted).

 In *Lemon v. Kurtzman,* the Supreme Court developed a three-prong test to determine whether a statute or program complies with the mandates of the Establishment Clause. 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under the *Lemon* test a program does not violate the Establishment Clause if: (1) it has a secular legislative purpose, (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not create excessive entanglement between government and religion. *Id.* at 612–613, 91 S.Ct. at 2111 (citations omitted). In *Agostini v. Felton,* the Supreme Court modified the *Lemon* test emphasizing the continuing importance of the first two prongs but determining that entanglement could be considered an aspect of the second-prong's "effect" inquiry. 521 U.S. 203, 222–223, 117 S.Ct. 1997, 2010, 138 L.Ed.2d 391 (1997).

 In *Agostini,* the Court used "three primary criteria" in evaluating whether government action has the primary effect of advancing religion: whether the statute or program in question "result[s] in governmental indoctrination; define[s] its recipients by reference to religion; or cre-

ate[s] an excessive entanglement." *Id.* at 234, 117 S.Ct. at 2016. Accordingly, for a law or program to have forbidden "effects" it must be fair to say that government itself has advanced religion through its own activities and influence. *Amos,* at 337, 107 S.Ct. at 2869. Taking as true plaintiffs' allegations (as the Court must at this stage) the Court finds that plaintiffs' complaint raises constitutional questions under the Establishment Clause. Accordingly, plaintiffs' complaint states a claim upon which relief can be granted and defendants' motion to dismiss is denied.

At the heart of the Establishment Clause is the principle that government, state or federal, should pursue a course of neutrality favoring neither one religion over another nor religion generally. *Grumet,* at 696, 114 S.Ct. at 2487 (citations omitted). Plaintiffs' complaint contains allegations which if proven would demonstrate that VA favors religion generally. For example, the chaplain spiritual assessment form used by the VA Medical Center in Richmond, Virginia (which is attached to plaintiffs' complaint) states in relevant part as follows:

> Your health has many components (physical, mental, and spiritual). With your consent, the following questions will help your healthcare providers (medical doctors, nurses, chaplains and others) understand the spiritual component of your life. It is the goal of chaplains to facilitate spiritual health and growth, since research has shown the positive correlation between spiritual health and physical/emotional health and satisfaction.

Such language (which actually links a patient's spiritual health to his or her physical health) could (when viewed in conjunction with additional evidence) demonstrate

that VA impermissibly favors religion over non-religion because it tends to send a message to non-religious veterans that they may be unable to completely heal if they do not believe that spirituality plays an important role in their recovery. *See Santa Fe Indep. School Dist. v. Doe,* 530 U.S. 290, 309–310, 120 S.Ct. 2266, 2279, 147 L.Ed.2d 295 (2000) (citation and internal quotation marks omitted).

Additionally, plaintiffs' allegations (if proven) would demonstrate that VA is advancing religion in violation of the second-prong of the *Lemon* test. A program has the primary effect of advancing religion when it, for example, "create[s] an excessive entanglement." *Agostini,* at 234, 117 S.Ct. at 2016. In their complaint, plaintiffs allege that VA integrates chaplain services into patient medical care because it "intends that the [ ] spiritual dimension of health be substantively integrated into all aspects of patient care." Pls.' Compl. at ¶ 38. Accordingly, if a VA chaplain assesses that a patient has a "spiritual injury or sickness" he or she is to then determine what pastoral care interventions are necessary, *Id.* at ¶ 43, because VA's holistic health care protocol is premised upon the belief that "good health care is incomplete without substantively addressing the spiritual dimension of each patient." *Id.* at ¶ 46.

Plaintiffs' allegations could (when viewed in conjunction with additional evidence) demonstrate that VA believes it cannot provide its patients with complete quality health care unless it substantively integrates a spiritual dimension into all aspects of care. Such a demonstration could support a finding of excessive entanglement between government provided health care and religion.[1] Accordingly,

1. Richmond Virginia's chaplain spiritual assessment form goes so far as to label VA chaplains as healthcare providers which pro-

vides further support for the Court's conclusion that plaintiffs' complaint may state a claim of excessive entanglement.

plaintiffs' allegations contained within their complaint concerning substantive integration of spirituality into VA's provision of medical care may state a claim that VA's chaplaincy violates the Establishment Clause by impermissibly advancing religion through its activities and influence. *Lemon*, at 612, 91 S.Ct. at 2111 (citation omitted); *Amos*, at 337, 107 S.Ct. at 2869.

 Defendants argue plaintiffs' complaint fails to state a claim because they do not allege that patients are coerced into participating in chaplain services. While plaintiffs indeed fail to allege that patients are coerced into participating in chaplain services (and Richmond's chaplain spiritual assessment form clearly demonstrates that coercion is not present) absence of such an allegation is not fatal to plaintiffs' claims because "[t]he Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion ..." *Engel v. Vitale*, 370 U.S. 421, 430, 82 S.Ct. 1261, 1267, 8 L.Ed.2d 601 (1962). Accordingly, VA's chaplaincy could violate the Establishment Clause despite an absence of coercion on the part of its chaplains.

The determination of an Establishment Clause violation is a highly fact-specific inquiry. When ruling on defendants' motion to dismiss the Court is limited to an analysis of plaintiffs' complaint and exhibits attached thereto. *See Hill*, at 251 (citation omitted); *Tierney*, at 738 (citations omitted). Accordingly, the Court does not possess sufficient factual information to conclude that as a matter of law VA's chaplaincy practices do not violate the Establishment Clause. VA's chaplaincy practices may well fall under the "room for play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Walz*, at 669, 90 S.Ct. at 1412. However, such an inquiry is better addressed on summary judgment where both parties have the opportunity to submit evidence to the Court in support of their respective positions.

### ORDER

IT IS ORDERED that defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is DENIED.