AMERICAN FRIENDS SERVICE COMMITTEE, et al., Plaintiffs,

v.

Richard L. THORNBURGH, et al., Defendants.

No. CV–88–6921–JMI (Kx).

United States District Court, C.D. California.

Aug. 23, 1989.

National Center for Immigrants' Rights, Inc., Peter A. Schey, Carlos Holguin, Los Angeles, Cal., Law Offices of Ira Gollobin, New York City, Montgomery, McCracken, Walker & Rhoads, Alan Reeve Hunt, Philadelphia, Pa., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., Steven R. Valentine, Deputy Asst. Atty. Gen., Thomas W. Hussey, Deputy Director, Office of Immigration Litigation, Linda S. Wendtland, Atty., Civ. Div., U.S. Dept. of Justice, Washington, D.C., Robert C. Bonner, U.S. Atty., Frederick M. Brosio, Jr., Michael C. Johnson, Asst. U.S. Attys., Los Angeles, Cal., for defendants.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

IDEMAN, District Judge.

Upon consideration of the moving, opposition, reply and amici curiae briefs, and oral argument of counsel IT IS HEREBY ORDERED as follows:

1. Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

2. Plaintiff American Friends Service Committee ("AFSC") is a Quaker organization with principal offices in Philadelphia, Pennsylvania. The AFSC's current activities include charitable and relief work in the United States and other countries. The individual plaintiffs are associated with the AFSC in various employer and employee positions. Defendants are the United States Attorney General, the Immigration and Naturalization Service, and the United States.

Plaintiffs challenge the employer sanctions provisions of the Immigration Reform and Control Act of 1986, ("IRCA"), 8 U.S.C. § 1324a. Title 8 U.S.C. § 1324a provides that it is unlawful to employ an individual knowing that the individual is an alien not authorized to work in the United States, or to employ an individual without verifying through appropriate documentation that such authorization exists.

Plaintiffs allege that they have hired employees since November 6, 1986, the effective date of IRCA, and have not complied with the requirements of § 1324a because to do so "would violate the sincerely held religious beliefs of plaintiffs in the sacredness and equality of all human life." More specifically, plaintiffs allege that complying with IRCA would require plaintiffs affirmative participation in an indirect immigration control program which plaintiffs believe is aimed to "visit hunger and deprivation" upon illegal immigrants. Plaintiffs also allege that they are subject to civil and criminal penalties under § 1324a for noncompliance. Based on these facts, plaintiffs seek a declaration that the employer sanctions provision of IRCA is an unconstitutional violation of the free exercise clause of the First Amendment of the Constitution.

3. Defendants move to dismiss the action for failure to state a claim. Defendants argue that the appropriate standard for review of the constitutionality of IRCA is that the statute should be upheld as long as it is not "wholly irrational" because Congress enacted IRCA pursuant to its near absolute authority to regulate immigration matters. Congress' decisions in the immigration field are entitled to the utmost deference by the judiciary, and immigration statutes are subject to such a "narrow" standard of review that the legislature's choices must be sustained unless they are "wholly irrational." *Mathews v. Diaz*, 426 U.S. 67, 82–83, 96 S.Ct. 1883, 1892–93, 48 L.Ed.2d 478 (1976). Further, defendants argue that the United States Supreme Court has long recognized that Congress' power over aliens is basically absolute. "The Court without exception has sustained Congress' 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.' " *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972) (quoting *Boutilier v. INS*, 387 U.S. 118, 123, 87 S.Ct. 1563, 1567, 18 L.Ed.2d 661 (1967)). Defendants argue that the employer sanctions provision is directly related to discouraging illegal immigration and

therefore clearly passes the "wholly irrational" standard.

In addition, defendants argue that even under traditional First Amendment analysis the plaintiffs have failed to state a claim.

In determining whether a neutrally based statute violates the free exercise clause, courts must weigh three factors: (1) the magnitude of the statute's impact upon the exercise of the religious beliefs, (2) the existence of a compelling state interest justifying the burden imposed upon the exercise of the religious belief, and (3) the extent to which recognition of an exemption from the statute would impede the objectives sought to be advanced by the state.

*EEOC v. Pacific Press Pub. Ass'n*, 676 F.2d 1272, 1279 (9th Cir.1982).

Defendants argue that although plaintiffs have alleged that the statute has a substantial impact on their free exercise rights, this impact is not sufficient to outweigh the compelling governmental interest in controlling immigration. Defendants also argue that an exemption such as the one sought in the instant action is not feasible because it would reactivate the employment "magnet" which draws illegal aliens to the United States. Defendants note that over 100 religious organizations signed on to amici curiae briefs filed in support of plaintiffs' opposition to the instant motion, and therefore an exemption for plaintiffs could have far reaching effects on immigration policy.

Further, defendants argue that the recent Ninth Circuit case of *United States v. Aguilar*, 871 F.2d 1436 (9th Cir.1989) compels this Court to dismiss. In *Aguilar*, the defendants were convicted of violations of the immigration laws, arising from their participation in the "sanctuary movement" aimed at the smuggling, transporting, and harboring of Central American refugees. *Id.* The *Aguilar* defendants argued that the First Amendment free exercise clause prevents their conviction. *Id.* at 1468. Further, the *Aguilar* defendants argued that the government should be required to provide evidence to show that it has an

overriding interest that cannot accommodate a First Amendment exemption, and that the court should analyze their First Amendment claim by focussing on smuggling, transporting, and harboring individually, requiring the government to demonstrate an overriding interest with respect to each. *Id.* at 1468–69.

The *Aguilar* court declined to require the government to present such evidence and stated that the "proposition that the government has a compelling interest in regulating its border hardly needs testimonial documentation. The Court 'has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Id.* at 1469, (quoting *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953). Further, the court held that a demonstration of overriding governmental interest as to each of the crimes of smuggling, transporting, and harboring was unnecessary because the "government's interest is in controlling immigration, and Congress has determined that this requires penalizing not only smuggling but also transporting and harboring to discourage illegal aliens from crossing the U.S. borders." *Aguilar* at 1469. The court also noted that smuggling, transporting and harboring each "represents but one facet of the comprehensive legal framework governing entry into the United States and admission to its citizenship." *Id.* (quoting *United States v. Merkt,* 794 F.2d 950, 955 (5th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

Defendants argue that the plaintiffs in the instant action are asserting a First Amendment claim very similar to the First Amendment claim asserted by the *Aguilar* defendants. Defendants argue that IRCA is also "one facet" of Congress' immigration policy and that this Court may recognize the government's interest in controlling immigration without taking evidence. Moreover, defendants argue that Congress' determination that employer sanctions are necessary to turn-off the employment "magnet" attracting illegal aliens, is enti-

tled to deference by this Court, and that this Court should not re-examine the advisibility of employer sanctions.

In their opposition, plaintiffs state that they do not challenge Congress' authority to make rules for the admission of aliens to citizenship and to control the national borders. However, plaintiffs argue that IRCA is distinguishable from other immigration laws because IRCA in effect deputizes employers to become border guards. Plaintiffs argue that it is their "conscription" as border guards which violates their free exercise rights.

Based on this distinction, plaintiffs argue that the Court must examine IRCA under traditional First Amendment analysis and require at least a "compelling" governmental interest to uphold the law. *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (holding that a state may justify a limitation on religious freedom by showing that it is essential to accomplish an overriding governmental interest). In *Lee,* the Amish challenged the law requiring contribution to the social security fund on the basis that it violated their free exercise rights. *Id.* The Court analyzed the case by "examining the extent of the burden imposed on their religious practices, the interest of the government in uniform law enforcement, and the likelihood that the government could enforce its policy by other, less instrusive means." *United States v. Merkt,* 794 F.2d 950, 955 (5th Cir.1986). Finally, plaintiffs argue that the Court should not dismiss the action at this stage of the proceeding, but should allow the case to continue and develop a factual record upon which the Court can balance the defendants' and the plaintiffs' competing interests.

The Court finds the defendants' arguments persuasive. The Court finds that it is unnecessary to duplicate Congress' legislative efforts in enacting IRCA by developing a factual record regarding the wisdom of employer sanctions. In addition, the Court finds that the government's overriding interest in immigration control in general is well recognized by the courts and does not require factual development.

Further, the Court finds that plaintiffs are unable to state a claim under both the "wholly irrational" or "compelling interest standards." Specifically, the Court finds that assuming IRCA has a substantial impact upon plaintiffs' free exercise rights as alleged, the plaintiffs' interests cannot overcome the government's interest in immigration control as a matter of law. Moreover, the Court finds that plaintiffs cannot state a claim because a reasonable accommodation for plaintiffs' religious practice in the form of an exemption to IRCA is not feasible. In the instant action, plaintiffs' interests and the government's interests are diametrically opposed. Granting an exemption to the plaintiffs would have the effect of reactivating the employment "magnet" that Congress has endevored to turn-off by enacting IRCA. Based on the foregoing, the defendants' motion to dismiss is granted. Accordingly, the instant action is dismissed with prejudice.

IT IS SO ORDERED.