910 F.2d 42
 54 Empl. Prac. Dec. P 40,261, 59 USLW 2105
 INTERCOMMUNITY CENTER FOR JUSTICE AND PEACE, Sister Marie
Donaher, Sister Clare Nolan, Sister Monica
McGloin, Sister Joanna Ohlandt, Sister
Dale McDonald, Sister Pat
Jelly, Plaintiffs,
Intercommunity Center for Justice and Peace, Plaintiff-Appellant,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Charles Sava, in his
official capacity as Director of Immigration and
Naturalization Service, Alan C. Nelson, in his official
capacity as Commissioner of Immigration and Naturalization
Service, Richard L. Thornburgh, in his capacity as Attorney
General of the U.S., and Immigration and Naturalization
Service, an agency of the Department of Justice, Defendants-Appellees.
 No. 1095, Docket 89-6260.
 United States Court of Appeals,
Second Circuit.
 Argued March 26, 1990.
Decided July 27, 1990.
 
 Ellen Yaroshefsky, New York City, for plaintiff-appellant.
 Margaret M. Welch, Newark, N.J., for amici curiae.
 Linda S. Wendtland, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Thomas W. Hussey, Deputy Director, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C. and Andrew J. Maloney, U.S. Atty. for E.D.N.Y., Scott A. Dunn, Sp. Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendants-appellees.
 Before OAKES, Chief Judge, and WINTER and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 The Intercommunity Center for Justice and Peace ("ICJP"), an organization of forty-one Roman Catholic orders, appeals from an October 27, 1989 judgment of the United States District Court for the Eastern District of New York (Glasser, J.), dismissing the complaint in this action for failure to state a claim upon which relief may be granted. In the complaint, the ICJP and six individual Roman Catholic nuns joined as plaintiffs alleged that their religious beliefs prevent them from complying with the employer verification and sanctions provisions of the Immigration Reform and Control Act of 1986, 8 U.S.C. Sec. 1324a (1988) (the "Act"). The plaintiffs sought a judgment declaring that they are exempt from the Act and enjoining defendants from enforcing the Act as it applies to them on the ground that such enforcement would violate the free exercise clause of the first amendment. On appeal, the ICJP pursues the free exercise claim and also contends that, absent an explicit statement of intent by Congress, the Act may not be applied to ICJP members because it raises serious establishment clause questions.
 
 
 2
 For the reasons that follow, we affirm.
 
 BACKGROUND
 
 3
 The Immigration Reform and Control Act was the result of fifteen years of congressional hearings and executive branch studies concerning the problem of illegal immigration into the United States. See H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 52-53, reprinted in 1986 U.S.Code Cong. & Admin.News 5649, 5656-57. By 1986, Congress had determined from these hearings and studies that "[e]mployment is the magnet that attracts aliens here illegally or, in the case of nonimmigrants, leads them to accept employment in violation of their status." Id. at 46, 1986 U.S.Code Cong. & Admin.News at 5650. Addressing this problem, Congress concluded that employer "[s]anctions, coupled with improved border enforcement, is the only effective way to reduce illegal entry and ... the most practical and cost-effective way to address this complex problem." Id. at 49, 1986 U.S.Code Cong. & Admin.News at 5653. This conclusion was supported by the experience of other nations where " 'employer sanctions laws helped to deter illegal alien employment.' " Id. at 47, 1986 U.S.Code Cong. & Admin.News at 5651 (quoting GAO Report on Illegal Aliens: Information on Selected Countries' Employment Prohibition Laws 2 (Oct.1985)).
 
 
 4
 The Act requires employers to verify that each of their employees is authorized to work in the United States. 8 U.S.C. Sec. 1324a(b). Employers must file an Employment Eligibility Verification Form for each employee, attesting that they have examined certain types of documents prescribed by the Attorney General and have verified that the employee is not an unauthorized alien. 8 U.S.C. Sec. 1324a(b)(1)(A); 8 C.F.R. Sec. 274a.2 (1990). Civil fines may be imposed if the employer violates the verification requirements or knowingly employs an unauthorized alien. 8 U.S.C. Sec. 1324a(e)(4)-(5). A pattern or practice of knowingly employing unauthorized aliens may result in criminal punishment. 8 U.S.C. Sec. 1324a(f).
 
 
 5
 Plaintiffs alleged in their complaint that they offer employment to people in need, without regard to immigration status, as part of their religious ministries. According to the complaint, the teachings of the Roman Catholic Church impose on plaintiffs a religious duty to provide food, clothing, shelter and the "means to sustain their own lives" to all people without regard to residence, nationality or immigration status. Plaintiffs asserted that requiring them to comply with the Act therefore would violate the free exercise clause of the first amendment. Relying on NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), the ICJP also contends on appeal that, in the absence of an explicit statement including religious organizations within the scope of the Act, they are exempt from the Act because it threatens to cause excessive government entanglement with religion, in violation of the establishment clause of the first amendment. The ICJP asserts that recognizing such an exemption would not defeat the purposes of the Act, because it could be limited to those who offer employment "solely for the internal administration of their religious orders."
 
 DISCUSSION
 
 6
 We accept as true for purposes of this appeal the allegation that plaintiffs' religious beliefs compel them to provide employment to persons in need without regard to residence, nationality or immigrant status. See, e.g., Employment Div. v. Smith, --- U.S. ----, 110 S.Ct. 1595, 1604-05, 108 L.Ed.2d 876 (1990); Smith v. Board of Educ., 844 F.2d 90, 93 (2d Cir.1988). In NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), the Court implied an exception to the jurisdiction of the National Labor Relations Board by invoking the maxim "that an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." Id. at 500, 99 S.Ct. at 1318. The Court found that the Board's discretionary assertion of jurisdiction over lay faculty at Catholic schools "would give rise to serious constitutional questions" and denied enforcement of the Board's orders in the absence of an " 'affirmative intention of the Congress clearly expressed' " to include religious institutions within its jurisdiction. Id. at 500-01, 99 S.Ct. at 1319 (citation omitted). Our first inquiry, therefore, is whether application of the Act to plaintiffs gives rise to serious constitutional questions.
 
 
 7
 The religion clauses of the first amendment provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const.amend. I. These clauses have been interpreted as providing full protection for religious beliefs but only limited protection for overt acts prompted by those beliefs. "Thus, the First Amendment obviously excludes all 'governmental regulation of religious beliefs as such.' " Smith, 110 S.Ct. at 1599 (quoting Sherbert v. Verner, 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963) (emphasis in original)). Congress also may not discriminate against religion by banning acts "only when they are engaged in for religious reasons, or only because of the religious belief that they display." Id. However, the "legislative power ... may reach people's actions when they are found to be in violation of important social duties or subversive of good order, even when the actions are demanded by one's religion." Braunfeld v. Brown, 366 U.S. 599, 603-04, 81 S.Ct. 1144, 1146, 6 L.Ed.2d 563 (1961); see also Smith, 110 S.Ct. at 1599-1600; Reynolds v. United States, 98 U.S. 145, 166-67, 25 L.Ed. 244 (1879).
 
 
 8
 The Immigration Reform and Control Act neither regulates religious beliefs nor burdens acts because of their religious expression or motivation. Rather, it is a valid, neutral law of general application that happens to compel action contrary to certain religious beliefs. No free exercise claim exists under such circumstances. "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).' " Smith, 110 S.Ct. at 1600 (quoting United States v. Lee, 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982) (Stevens, J., concurring)).
 
 
 9
 Unlike the cases applying strict scrutiny to invalidate a law on free exercise grounds, this case does not involve a hybrid claim in which other constitutional concerns bolster the free exercise claim. See Smith, 110 S.Ct. at 1602. For example, the Court found that the compulsory school attendance law in Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), could not withstand strict scrutiny because " 'the interests of parenthood [were] combined with a free exercise claim.' " Smith, 110 S.Ct. at 1601 n. 1 (quoting Yoder, 406 U.S. at 233, 92 S.Ct. at 1542). Thus, the Court in Yoder was faced with a state law that not only interfered with free exercise rights, but also " 'unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control.' " Yoder, 406 U.S. at 233, 92 S.Ct. at 1542 (quoting Pierce v. Society of Sisters, 268 U.S. 510, 534-35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925)). No such hybrid concerns are at issue here.
 
 
 10
 The Act also does not provide for a discretionary exemption that is applied in a manner that fails to accommodate free exercise concerns. In the unemployment insurance cases, the Court held that a state could not provide "good cause" exemptions to a general law and then permit the exercise of discretion in a manner that discriminated against religious beliefs. "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." Smith, 110 S.Ct. at 1603 (citing Bowen v. Roy, 476 U.S. 693, 708, 106 S.Ct. 2147, 2156, 90 L.Ed.2d 735 (1986)); see, e.g., Hobbie v. Unemployment Appeals Comm'n, 480 U.S. 136, 142 n. 7, 107 S.Ct. 1046, 1050 n. 7, 94 L.Ed.2d 190 (1987).
 
 
 11
 The ICJP points to the exemptions in the Immigration Reform and Control Act for household employees and employees hired prior to November 1986, see 8 C.F.R. Secs. 274a.1(h), 274a.2(a), and contends that it seeks only a limited exemption for those whose religion requires them not to discriminate on the basis of immigration status as an integral part of their religious mission. It further contends that an exemption must be recognized in order to avoid excessive governmental entanglement with religion prohibited by the establishment clause. The existing exemptions, however, have no relation to religion. No day-to-day inspection is required and, unlike the proposed exemption, uniform application of the existing exemptions avoids entangling governmental inquiries into religious beliefs. See Bob Jones Univ. v. United States, 461 U.S. 574, 604 n. 30, 103 S.Ct. 2017, 2035 n. 30, 76 L.Ed.2d 157 (1983).
 
 
 12
 We find in plaintiffs' proposed exemption a strong similarity to the exemption proposed in Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). There, Congress enacted a single exemption to the conscription laws for conscientious objectors and the Court refused to extend that exemption to those who objected only to specific wars on religious grounds. Id. at 441, 91 S.Ct. at 832. Here, as in Gillette, plaintiffs "ask for greater 'entanglement' by judicial expansion of the exemption." Id. at 450, 91 S.Ct. at 836. The proposed exemption would require an inquiry into whether or not a particular religious requirement is central to an individual's religious mission. Such an exemption, rather than resolving first amendment concerns, would transform the Act from one that involves no entanglement with religion, see Lemon v. Kurtzman, 403 U.S. 602, 613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), into one in which religious beliefs would have to be scrutinized, thereby raising serious establishment clause questions. See Braunfeld, 366 U.S. at 609, 81 S.Ct. at 1149; Brandon v. Board of Educ., 635 F.2d 971, 978-79 (2d Cir.1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981). The constitutional inquiry is not only whether the proposed exemption is manageable,[1] but whether it would compel an inquiry into religious beliefs. Accordingly, we reject the ICJP's establishment claim as well.
 
 
 13
 We are convinced that, even without the decision in Smith, strict scrutiny would neither be warranted, cf. Smith, 110 S.Ct. at 1603 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986)); Azizi v. Thornburgh, 908 F.2d 1130, 1133 (2d Cir.1990) (applying rational basis test in upholding against equal protection and due process challenges requirement that alien who marries citizen during pendency of deportation proceeding reside outside United States for two years prior to petition for permanent resident status), nor alter the result in this case, Smith, 110 S.Ct. at 1611-12 (O'Connor, J., concurring). Congress has " 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.' " Kleindienst v. Mandel, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972) (quoting Boutilier v. INS, 387 U.S. 118, 123, 87 S.Ct. 1563, 1567, 18 L.Ed.2d 661 (1967)). The scope of Congress' interest in controlling the flow of aliens is analogous to its interest in a uniform tax system, which has been found to be a compelling governmental interest that overrides free exercise claims. See Lee, 455 U.S. at 258-60, 102 S.Ct. at 1055-56; cf. Catholic High School Ass'n v. Culvert, 753 F.2d 1161, 1171 (2d Cir.1985) (state may subject parochial schools to jurisdiction of state labor board because labor laws are essential to industrial harmony).
 
 
 14
 "There being no contention that [the Act] represents an attempt to regulate religious beliefs, the communication of religious beliefs, or the raising of one's children in those beliefs, the rule to which we have adhered ever since Reynolds plainly controls." Smith, 110 S.Ct. at 1602. Having found no serious constitutional questions, we hold that the Act properly applies to the ICJP and its members. Because we find no constitutional right implicated here, we do not address the government's arguments concerning standing, ripeness or exhaustion of administrative remedies.
 
 CONCLUSION
 
 15
 The judgment of the district court is affirmed.
 
 
 
 [1]
 We note that while the ICJP seeks an exemption only for its members and not the 52 million Catholics in America or other Catholic institutions, it is not alone. Over one hundred amici of the same faith have urged support for plaintiffs' position in this case, and one district court decision, American Friends Serv. Comm. v. Thornburgh, 718 F.Supp. 820, 821 (C.D.Cal.1989), indicates that there are even more potential applicants for a religious exemption