951 F.2d 957
 AMERICAN FRIENDS SERVICE COMMITTEE CORPORATION; Stephen G.
Cary; Teresa Mathis; Aurora Camacho De Schmidt
et al., Plaintiffs-Appellants,
v.
Richard THORNBURGH, Attorney General of the United States;
United States Immigration and Naturalization
Service; United States of America,
Defendants-Appellees.
 No. 89-56095.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 8, 1990.
Decided Aug. 2, 1991.
As Amended on Denial of Rehearing
and Rehearing En Banc Dec. 18, 1991.
 
 Carlos Holguin, National Center for Immigrants' Rights, Inc., Los Angeles, Cal., for appellants.
 Steven Richards Valentine, U.S. Dept. of Justice, Washington, D.C., for appellees.
 Evan A. Jenness, Irell & Manella, Los Angeles, Cal., for amicus Civil Rights Organization.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, CANBY, and WIGGINS, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 The American Friends Service Committee ("AFSC")[1] appeals the district court's dismissal of its suit for injunctive and declaratory relief. AFSC alleges that its free exercise of religion is violated by the "employer sanction" provisions of the Immigration Reform and Control Act ("IRCA"), 8 U.S.C. § 1324a(a)(1). Those provisions require, generally, that employers verify the legal immigration status of their employees. The district court dismissed the action for failure to state a claim. American Friends Service Comm. v. Thornburgh, 718 F.Supp. 820 (C.D.Cal.1989). We affirm.
 
 BACKGROUND
 
 2
 The AFSC is a Quaker organization, whose activities include charitable and relief work. The employer sanction provisions of IRCA apply to the AFSC's employment of approximately 400 persons. Those provisions prohibit an employer from hiring, or continuing to employ, an alien who the employer knows is not authorized to work in the United States. 8 U.S.C. § 1324a(a)(1)(A) & (a)(2). IRCA also requires an employer to attest (on a "Form I-9") that it has verified the legality of an alien's immigration status by examining documents which evidence identity and work authorization. 8 U.S.C. § 1324a(a)(1)(B). Failure to comply with these provisions can result in civil and criminal sanctions. 8 U.S.C. § 1324a(e) & (f).
 
 
 3
 AFSC has not complied with these provisions of IRCA because it believes that to do so would violate the religious beliefs and practices of its members. Those beliefs require that AFSC and its members "welcome--that they help and not show hostility to--the sojourner, the stranger, the poor, and the dispossessed in their midst." Appellants' Opening Brief, at 2. Thus, AFSC contends that it
 
 
 4
 can neither discharge brothers and sisters whose religious beliefs preclude their producing proof of secular work authorization, nor refuse human beings work--thus depriving them of the means to feed and clothe themselves and their children--simply because they may be strangers in our land.
 
 
 5
 Id. at 4.
 
 
 6
 The district court granted the government's motion to dismiss for failure to state a claim, pursuant to Fed.R.Civ.Proc. 12(b)(6). The district court ruled that
 
 
 7
 plaintiffs are unable to state a claim under both the "wholly irrational" or "compelling interest standards." Specifically, the Court finds that, assuming IRCA has a substantial impact upon plaintiffs' free exercise rights as alleged, the plaintiffs' interests cannot overcome the government's interest in immigration control as a matter of law.
 
 
 8
 American Friends Service Committee v. Thornburgh, 718 F.Supp. at 823.
 
 ANALYSIS
 
 9
 AFSC contends that IRCA should be construed so that employer sanctions would not apply to AFSC as a religious institution. AFSC concedes that there is no express exemption, but argues that one should be implied to avoid a serious constitutional question and to honor a presumed intent of Congress not to interfere unnecessarily with religious exercise. AFSC relies on NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), in which the Supreme Court held that the National Labor Relations Act should be construed not to grant the NLRB jurisdiction over labor relations between parochial schools and their teachers. AFSC contends that the same principle should exclude it from coverage of IRCA.
 
 
 10
 We rejected an analogous argument in NLRB v. Hanna Boys Center, 940 F.2d 1295 (9th Cir.1991). There we refused to construe the National Labor Relations Act so as to exclude NLRB jurisdiction over lay non-faculty employees of a residential school for boys operated by the Roman Catholic Church. We pointed out that the Supreme Court's decision in Catholic Bishop had been based on the unique role of teachers in accomplishing the religious mission of the parochial schools. Id. at 1301-02. Its principle could not be extended, we held, to non-teaching lay workers. Id. at 1302-03.
 
 
 11
 AFSC does not allege that its workers are teachers or that IRCA interferes with a teaching function or its equivalent. It simply argues that its religious principles compel conduct that IRCA makes unlawful. That fact does not bring AFSC within the rule of Catholic Bishop. And apart from Catholic Bishop, we can find no justification in the language or history of IRCA for exempting AFSC as a religious service organization from IRCA's employer sanctions that otherwise expressly apply.
 
 
 12
 We move then, to AFSC's contention that, as applied to it, IRCA's employer sanctions violate the free exercise clause. Had we reviewed this case immediately after the district court's ruling, we would have applied the balancing test articulated in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and EEOC v. Pacific Press Publishing Ass'n, 676 F.2d 1272 (9th Cir.1982). But after AFSC filed this appeal, the Supreme Court handed down its decision in Employment Division, Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). That case dramatically altered the manner in which we must evaluate free exercise complaints like that of AFSC, and requires that we affirm the district court's dismissal.
 
 
 13
 Smith was an action brought by two members of the Native American Church who had been denied unemployment compensation by the State of Oregon. Compensation had been denied because the two workers had been discharged by their private employer for "misconduct." The "misconduct" was the ingestion of peyote at a religious ceremony. Oregon law made the possession of peyote a crime, and provided no exception for religious use.
 
 
 14
 The two Church members claimed that the denial of unemployment benefits on that ground violated their first amendment right to free exercise of their religion. The Supreme Court ruled that the first amendment had not been violated because the Oregon law criminalizing the use of peyote was a "valid and neutral law of general applicability." Id., 110 S.Ct. at 1600 (quoting U.S. v. Lee, 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982) (Stevens, J., concurring). The Court indicated that such free exercise claims must fail "if prohibiting the exercise of religion ... is not the object of the [law] but merely the incidental effect of a generally applicable and otherwise valid provision...." Id. (emphasis added).
 
 
 15
 The present case falls squarely within the rule announced in Smith. There is no allegation, nor does AFSC contend, that IRCA's employer sanction provisions are directed at religious belief or the exercise of religion. See Intercommunity Center for Justice and Peace v. INS, 910 F.2d 42, 44 (2d Cir.1990) (rejecting, on the authority of Smith, a similar challenge by Catholic nuns to IRCA's employer sanctions provisions: "[IRCA] neither regulates religious beliefs nor burdens acts because of their religious expression or motivation.") Nor does AFSC assert, in this case, any defect in IRCA other than its infringement of AFSC's free exercise of religion. Thus, for purposes of the analysis required by Smith, IRCA is a "valid and neutral law of general applicability." Smith, 110 S.Ct. at 1600 (quoting United States v. Lee, 455 U.S. at 263 n. 3, 102 S.Ct. at 1058 n. 3)).
 
 
 16
 AFSC contends, however, that its claim falls within two exceptions that the Court recognized to its rule in Smith. The first exception is that for "hybrid claims"--those claims which contain not only a free exercise challenge to governmental action, but also another substantive constitutional claim as well. Illustrative are Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (free exercise and freedom of expression violated by licensing system for religious and charitable solicitations), and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (free exercise and substantive due process right of parents to direct the education of their children violated by compulsory school attendance statute).
 
 
 17
 AFSC contends that its claim is "hybrid" in that it combines a substantive due process "right to employ" with a free exercise claim. At least since the demise of Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), the "right to employ" has been accorded insufficient constitutional protection to place it alongside the cases Smith cites as examples of "hybrid claims." Those cases are restricted to express constitutional protections such as freedom of speech, and firmly recognized substantive due process rights such as the privacy right in rearing children. There would be little left of the Smith decision if an additional interest of such slight constitutional weight as "the right to hire" were sufficient to qualify for this exception.
 
 
 18
 The second exception to the rule in Smith invoked by AFSC is equally unavailing. That exception applies to a challenge that arises "in a context that len[ds] itself to individualized governmental assessment of the reasons for the relevant conduct ... [e.g., where] a 'good cause' standard create[s] a mechanism for individualized exemptions." Smith, 110 S.Ct. at 1603. The Smith Court noted that instances of this exception had been limited to the denial of unemployment compensation, e.g., Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Thomas v. Review Board, Indiana Employment Security Div., 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); Hobbie v. Unemployment Appeals Comm'n of Florida, 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987). The Court described the principle of those cases as follows: "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." Smith, 110 S.Ct. at 1603 (citing Bowen v. Roy, 476 U.S. 693, 708, 106 S.Ct. 2147, 2156, 90 L.Ed.2d 735 (1986).[2]
 
 
 19
 AFSC contends that Smith's "individualized exemption" exception applies here, because IRCA's "employer sanction" provisions contain exceptions for independent contractors, household employees and employees hired prior to November, 1986. But those exceptions exclude entire, objectively-defined categories of employees from the scope of the statute; they are not "individualized exemptions" within the meaning of Smith. AFSC points to no procedures whereby anyone "applies" for any of these exemptions. IRCA does not set up a procedure for exemptions based on "individualized governmental assessment of the reasons for the relevant conduct" that would bring the second exception into play. See Smith, 110 S.Ct. at 1603.
 
 CONCLUSION
 
 20
 IRCA's broadly-applicable employer sanction provisions are not aimed at suppressing the free exercise of religion. AFSC's challenge to those provisions is not based on any cognizable constitutional claim in addition to its free exercise claim; its claim is therefore not "hybrid." IRCA does not contain a procedure for granting individualized exemptions. Smith therefore requires rejection of AFSC's free exercise claim. The judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 AFSC is joined by seven individual plaintiffs who are associated with AFSC in various capacities as employing officers or employees. Their arguments are not differentiated from those of AFSC
 
 
 [2]
 Apparently the Supreme Court did not apply this second "individualized exemption" in Smith itself because Smith involved (albeit indirectly) an "across-the-board criminal prohibition on a particular form of conduct." Smith, 110 S.Ct. at 1603