**Joseph R. BARQUIN, Plaintiff,**

v.

**The ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT, INC., Vermont Catholic Charities, Inc., St. Joseph's Orphan Asylum, Inc., and/or Its Successors or Assigns in Interest, and Sister Jane Doe, Defendants.**

Civ. A. No. 2:93–CV–169.

United States District Court, D. Vermont.

Nov. 10, 1993.

Philip H. White, Wilson & White, P.C., Montpelier, VT, for plaintiff.

William M. O'Brien, Winooski, VT, for defendant Roman Catholic Diocese of Burlington, Vermont, Inc.

John C. Gravel, Bauer & Gravel, Burlington, VT, for defendant Vermont Catholic Charities, Inc.

## OPINION AND ORDER

PARKER, Chief Judge.

In 1992, Joseph R. Barquin, plaintiff in this civil action, began to receive intensive psychotherapy and treatment as an adult for what he alleges were severe emotional and behavioral problems. As a result of this therapy, plaintiff claims that he discovered he was the victim of childhood sexual abuse, physical abuse and psychological abuse, such abuse allegedly having occurred approximately forty years ago when he was in the custody of St. Joseph's Orphan Asylum, Inc. ("St. Joseph's"). He now brings suit against Sister Jane Doe, the alleged perpetrator whose identity is yet unknown, and various religious organizations allegedly responsible for hiring and supervising Sister Jane Doe. He seeks compensatory damages for a myriad of personal injuries.

As part of his Complaint, plaintiff states that he has "used all due diligence, given the nature, extent, and severity of his psychological injuries and the circumstances of their infliction, to discover the fact that he has been injured by the sexual abuse ..." (Paper 1 at 7–8). He claims for relief set forth six theories for recovery: childhood sexual abuse; assault and battery; intentional infliction of emotional distress; negligent infliction of emotional distress; invasion of privacy; and negligence. He asserts all but the claims of negligence against Sister Jane Doe, and vicariously through a theory of respondeat superior against the various religious organizations. His claims of negligence lie solely against religious organizations.

■ Two of the defendants, The Roman Catholic Diocese, Inc. ("RCD") and Vermont Catholic Charities ("VCC") now move for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c).[1] Both RCD and VCC argue that the Complaint should be dismissed against them for failure to state a claim in that the statute of limitations has run and now bars the claims asserted. In addition RCD raises two constitutional arguments supporting dismissal.

■ On ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(c) the Court applies the same standards for dismissing a complaint as it would were the motion brought under Rule 12(b)(6). *Ad–Hoc Committee of the Baruch Black and Hispanic Alumni Assoc. v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987). "Under these standards, a court must accept the allegations contained in the complaint as true." *Id.* The allegations must be construed liberally. *Id.* Furthermore, dismissal of a complaint under Rule 12(b)(6) is reserved for those cases where it appears certain that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.*

With this standard in mind, the Court now turns to the first argument advanced by the defendants, the statute of limitations defense.

## I. STATUTE OF LIMITATIONS

■ The Court sits in diversity jurisdiction in this action and thus, state law governs

---

**1.** VCC actually styled its motion as a motion to dismiss pursuant to Vt.R.Civ.P. 12(b). Because this suit is pending in a federal court, procedural matters are governed by the federal rules. When the pleadings are closed, motions to dismiss for failure to state a claim are treated as motions for judgment on the pleadings. *Compare* Fed. R.Civ.P. 12(b) *with* Fed.R.Civ.P. 12(c); *see* Fed. R.Civ.P. 12(h)(2); *Ad–Hoc Committee of the Baruch Black and Hispanic Alumni Assoc. v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987); *see generally,* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 at 509–513 (1990).

substantive issues such as a statute of limitations defense. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Choice of law is governed by the law of the forum, which provides that tort actions are governed by the law of the place where the wrong occurred. *Goldman v. Beaudry,* 122 Vt. 299, 301, 170 A.2d 636 (1961). The abuse alleged in this action occurred in Vermont. Under Vermont law, when a plaintiff sues to recover damages for injuries "suffered as a result of childhood sexual abuse," that action must be commenced within

> six years of the act alleged to have caused the injury or condition, or six years of the time the victim discovered that the injury or condition was caused by that act, whichever period expires later.

Vt.Stat.Ann. tit. 12, § 522 (Supp.1992). For personal injury other than childhood sexual abuse, *e.g.,* physical or psychological injury unrelated to sexual abuse, Vermont law provides a separate limitations period of three years, with the cause of action accruing as of the date of the discovery of the injury. Vt. Stat.Ann. tit. 12, § 512(1)–(4) (1973 & Supp. 1992).

■ Defendants urge that because the alleged abuse in this case occurred over forty years ago, even allowing for a tolling of the statute of limitations because of disability or minority, Vt.Stat.Ann. tit. 12, § 551, plaintiff must have been aware of his injuries prior to 1992 and thus it is reasonable to assume that he should have discovered the cause of his injuries before now. Defending against such a stale claim contravenes the purpose of a statute of limitations period.

■ Defendants are mistaken, however, in their interpretation of the discovery rule in sections 512 and 522. Several general principles of statutory construction illuminate their error. As a preliminary matter, the Vermont General Assembly is presumed to act with full knowledge of prior legislation on the subject. *Rebideau v. Stoneman,* 398 F.Supp. 805, 813 (D.Vt.1975). Thus, in creating statutes of limitations, the legislature is presumed to know of related limitations provisions. Rules of discovery are contained in several Vermont statutes of limitations. For example, in medical malpractice cases, the limitations period is two years "from the date the injury is or reasonably should have been discovered, whichever occurs later, but not later than seven years from the date of the incident." Vt.Stat.Ann. tit. 12, § 521 (Supp. 1992). That provision was in existence as of 1989 when the Vermont legislature enacted section 522.

■ Having section 521 available as a model when section 522 was drawn up, the Vermont legislature elected to use rather different language for the rule of discovery contained in section 522. That is, it omitted the "or reasonably should have been discovered" language, leaving in place only the notion of actual discovery. *Compare* Vt.Stat. Ann. tit. 12, § 521 *with* § 522. With this circumstance in mind, two additional principles aid in the construction of section 522. First, a court interpreting state statutes must give effect to the intent of the legislature, and should begin with the presumption that the plain, ordinary meaning of a statute is intended. *State v. Yudichak,* 147 Vt. 418, 420, 519 A.2d 1150 (1986). When the language is clear, a court should not look beyond the statute to determine a contrary legislative intent. *Cavanaugh v. Abbott Laboratories,* 145 Vt. 516, 529–30, 496 A.2d 154 (1985). "The most elemental rule of statutory construction is that the plain meaning of the statute controls." *Id.* at 529, 496 A.2d 154 (quoting *Heisse v. State,* 143 Vt. 87, 89, 460 A.2d 444 (1983) (quotations omitted)).

■ Furthermore, in this same regard, the oft-heeded and "time-honored precept of 'expressio unius est exclusio alterius'" applies. *Grenafege v. Department of Employment Security,* 134 Vt. 288, 290, 357 A.2d 118 (1976). Contrast of sections 521 and 522 support the proposition that the omission of the "reasonably should have" language in section 522 was intentional. Courts should not supply words which the legislature has omitted when it can be inferred that the omissions are not inadvertent. *State v. Fox,* 122 Vt. 251, 255, 169 A.2d 356 (1961).

This same analysis can be applied to the statutory language contained in section 512(4), which contains a rule of discovery similar to that in section 522. Accordingly,

reading the Complaint in this action liberally, and assuming as true all of the allegations contained in that Complaint, plaintiff's assertions that he proceeded with due diligence in his attempts to determine the nature and cause of his injuries and that he did not discover the cause until 1992 precludes dismissal of all but one of plaintiff's claims based on a statute of limitations defense. Section 522 clearly states that he has six years from the time he discovered that his injuries were caused by sexual abuse, a discovery he claims he made in 1992. He filed his action in 1993.

■ Similarly, to the extent that he seeks recovery for injuries resulting from non-sexual abuse suffered by an act or default of Sister Jane Doe or RCD or VCC, his action accrues as of the date of his discovery of the injury, or 1992. Again, his action was filed in 1992, well within the statutory period. However, plaintiff's claim for relief under a theory of assault and battery for injuries unrelated to childhood sexual abuse is barred; such action must be brought within three years after the cause of action accrues. Vt.Stat. Ann. tit. 12, § 512(1).

## II. CONSTITUTIONAL ISSUES

RCD raises a procedural due process defense, as well as a First Amendment defense. In support of the due process defense, RCD essentially claims that its right to due process under the Fourteenth Amendment had been emasculated by the rule of discovery contained in the applicable statutes of limitations.[2] RCD asserts it has no meaningful means of defense against a claim that involves conduct which occurred over forty years ago. In addition, RCD argues that an allowance of common law tort actions based on the actions of clergy and other religious officials fosters excessive government entanglement with religion in violation of the First Amendment.

■ The plaintiff rebuts these arguments by first pointing out that these constitutional

defenses were not raised in RCD's Answer, and are thus waived. While it is true that a failure to raise an affirmative defense generally results in a waiver of that defense, *United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1253 (2d Cir.1989), it is also true that the liberal policy of Fed.R.Civ.P. 15 would permit RCD to amend its Answer to include the constitutional defenses raised herein. Furthermore, plaintiff is hardly prejudiced by the failure of RCD to affirmatively plead the constitutional defenses; RCD's motion for judgment on the pleadings was filed within thirty days of its Answer.

On the other hand, this Court recognizes the long-standing judicial principle that a federal court should not decide constitutional questions unnecessarily. However, given the Rule 15 amendment policy, it is highly likely that these claims will eventually find their way before the Court in this action. Accordingly, in the interests of expediency and efficient judicial administration, the Court will reach the merits of RCD's arguments.

### A. Due Process

■ RCD urges the Court to dismiss plaintiff's claims against it because to permit the action to go forward renders RCD defenseless. A defendant without recourse to witnesses and records because of the significant passage of time between the time the wrongful acts occurred and the time the suit was filed cannot be considered to have received adequate notice nor a meaningful opportunity to be heard. This position is much like the one advanced and rejected in *International Union of Electrical, Radio & Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). In that case, the Supreme Court set forth the applicable constitutional test when a litigant challenges legislative power to revive actions that are already barred by the running of a limitations period when they are filed.

---

**2.** RCD framed its argument in terms of this Court's actions in allowing a forty-year old claim to proceed; however, its attack seems more appropriately directed at the constitutionality of statutory provisions that incorporate rules of dis-

covery, such as sections 512(4) and 522, that bestow upon a plaintiff the right to proceed if he acts diligently within a specified time of his discovery of the cause of his injuries.

The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law.... Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment.

*Id.* at 243–44, 97 S.Ct. at 450 (quoting *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 315–16, 65 S.Ct. 1137, 1143, 89 L.Ed. 1628 (1945)) (quotations omitted).

■■■■ By analogy then, a state legislature's enactment of a law which extends a statute of limitations by means of a rule of discovery is not *per se* unconstitutional. RCD is thus left to the argument that the equities of this case deprive it of due process. RCD, however, provides no support for its theory that the prospect of an absence of records or witnesses violates a defendant's constitutional due process rights. RCD has made no showing that it has no access to records or witnesses, only that it will be burdensome for it to attempt to locate records and witnesses. That burden alone does not implicate an individual's due process rights. As stated by the Supreme Court:

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices that spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has nev-

er been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Id.* at 314, 65 S.Ct. at 1142 (citations omitted). RCD's constitutional due process defense is therefore rejected.

**B. Religious Freedom Under the First Amendment**

As a final argument in support of its motion to dismiss plaintiff's claims, RCD contends that by permitting plaintiff to proceed against RCD, the Court will impermissibly create an implied tort of clergy malpractice, which in turn fosters excessive entanglement with religion. RCD argues that the substantial level of religious activity at St. Joseph's establishes it as a religious institution deserving of the protections of the First Amendment's guarantees of free exercise of religion.

■■■■ Without question, the First Amendment embraces an absolute freedom to believe. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The First Amendment's protection of the freedom to act, however, "remains subject to regulation for the protection of society." *Id.* at 303–04, 60 S.Ct. at 903–04. Thus, actions prompted by religious beliefs receive limited protection. *Intercommunity Center for Justice & Peace v. I.N.S.,* 910 F.2d 42, 44 (2d Cir.1990). Conduct that violates "important social duties" or is "subversive of good order" may be regulated without infringing upon one's First Amendment rights. *Id.* The alleged abuse Sister Jane Doe bestowed upon the plaintiff falls outside the scope of conduct which would be constitutionally protected against state regulation even if that conduct were found to be prompted by religious belief.

However, the question of state regulation of conduct prompted by religious beliefs is a separate one from the one raised by RCD here. RCD claims that the actions of Sister

Jane Doe in caring for young orphans such as the plaintiff were part of her religious activities. Review of these activities by a court or jury, and a determination as to whether Sister Jane Doe breached a duty she owed to the plaintiff would foster an impermissible and excessive entanglement with religion.

 This argument has some merit. However, in this case it is unclear whether the actions taken by Sister Jane Doe had their origin in secular or religious activities. Tort claims which are based on purely secular activities do not invoke the protections of the Establishment Clause because "they are unrelated to the religious efforts of a cleric." *Schmidt v. Bishop,* 779 F.Supp. 321, 327 (S.D.N.Y.1991) (for example, negligent operation of church van). But to the extent that a cleric's actions are related to his or her religious endeavors, judicial review may foster excessive entanglement. Not having a sufficient factual basis for determining the circumstances surrounding Sister Jane Doe's alleged misconduct, it is not clear to the Court that a First Amendment defense would lie. Dismissal of the claims against her, were she seeking such relief would thus be premature at this stage.

 Similarly, dismissal of plaintiff's indirect and direct claims against RCD is premature. Although the prohibitions of the First Amendment may be implicated when a plaintiff seeks to hold a religious organization vicariously liable for wrongful conduct of its servant, it is not yet apparent whether the underlying claims against Sister Jane Doe are related to secular or religious activities, nor whether or to what extent the alleged activities were conducted within the scope of her employment at the orphanage. Thus, just as the claims against Sister Jane Doe must await further factual development, so must the claims of respondeat superior against RCD.

 The plaintiff's allegations of intentional and negligent conduct on the part of RCD in hiring and supervising Sister Jane Doe and in fostering an environment in which sexual and physical abuse could occur give rise to serious constitutional concerns.

Inquiry by a court or jury into the policies and practices of a religious organization in supervising and hiring clergy and other religious officials may foster excessive entanglement with religion. *Schmidt,* 779 F.Supp. at 332. On the other hand, if hiring was done with knowledge that a prospective employee had perverted sexual proclivities, the institution might well be held accountable even though the hiring was part of the administration of a religious facility. Resolution of these issues must await further factual development. See *Jones v. Trane,* 153 Misc.2d 822, 830, 591 N.Y.S.2d 927, 932 (N.Y.Sup.Ct. 1992) (such review may sometimes be appropriate).

### Conclusion

The Roman Catholic Diocese, Inc.'s Motion for Judgment on the Pleadings is hereby DENIED. (Paper 7) Vermont Catholic Charities Motion To Dismiss is hereby DENIED. (Paper 8)