Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILLIAMS joined. Judge KING wrote a dissenting opinion.
OPINION
NIEMEYER, Circuit Judge:
In 2000, the Commonwealth of Virginia amended a 1976 statute to mandate that each school division in the state establish in its classrooms a “minute of silence” so that “each pupil may, in the exercise of his or her individual choice, meditate, pray, or engage in any other silent activity which does not interfere with, distract, or impede other pupils in the like exercise of individual choice.” Va.Code Ann. § 22.1-203 (Michie 2000) (emphasis added). Several Virginia students and their parents commenced this action to challenge this statute on its face, contending that it establishes religion in violation of the First Amendment. The district court rejected the challenge, and we affirm.
I
In 1976, Virginia enacted into law § 22.1-203. This provision authorized, but did not require, local school boards to establish a minute of silence in their classrooms for the expressly stated purpose of allowing students to meditate, pray, or engage in any other silent activity. In 1994, the Virginia General Assembly required the Virginia Board of Education to adopt guidelines on religious activities in the schools. See Va.Code Ann. § 22.1-280.3. As directed, the Board of Education adopted “Guidelines Concerning Religious Activities in the Public Schools,” in which it provided:
Public schools may provide students ... with a minute of silence to collect themselves and put their upcoming tasks in meaningful perspective for the individual student. A brief minute of silence may also fulfill other secular objectives, including maintenance of discipline.
sf: s|i Jj: * * *
*271 The teacher may not indicate his or her views on whether students should use the time to pray or not to pray. The teacher should also not use the time to pray aloud in front of other students, nor permit any other student, or groups of students, to pray aloud.
Acting under the authority of the 1976 law, at least 14, and perhaps 20 school divisions in Virginia chose to establish a minute of silence in their classrooms, and a survey conducted by the Virginia Superintendent of Schools revealed that this minute of silence has not led to any peer-on-peer religious harassment.
In 2000, the Virginia legislature amended § 22.1-20S to require that every school division provide a minute of silence in the State’s public school classrooms and to direct the Attorney General to defend the statute when it is challenged in court. The amended law became effective July 1, 2000.[1]
Senator Warren Barry, who sponsored Senate Bill 209 (“SB 209”) containing the 2000 amendments to Virginia Code § 22.1-203, explained to the press that he introduced the bill in response to some recent highly publicized incidents of school violence with the hope that encouraging regular introspection by students would somehow lessen the urges of students to resort to violence. When asked by a newspaper reporter about his intent in sponsoring the bill, Senator Barry responded that his intent was not to force prayer in schools, but he added, “This country was based on belief in God, and maybe we need to look at that again.”[2]
During debate of. SB 209, some of the senators manifested their concern about the constitutionality of the bill. Senator Edward Houck of Spotsylvania stated that, given the religious diversity of his constituents — “Christians and Muslims and Hindus and atheists” — the proposed amendments, despite the fact that they were “pure in terms of [their] intent,” would amount to “crossing the line.” Accordingly, he urged his colleagues to “insulate ... all of our teachers and our school divisions from that tricky wicket of what is religious freedom and what is not” by striking the meditation and prayer language from the bill. Senator Stephen Newman of Lynch-burg criticized this position because such an altered bill would lack any “indication ... [of] what those students are [going to] be doing at all [during the minute of silence]. They, simply will be quiet with no *272 purpose.” Senator Newman explained further that the use of the terms “meditation, prayer and reflection” gives direction to what may be done during the minute of silence, but in no way could be viewed as sectarian. Similarly, Senator Barry, the bill’s sponsor, rejected any interpretation that associated the bill with school prayer. He stated:
[T]he purpose of the Bill has been stated and restated is not a religious crusade. It’s not to try and re-inject prayer into the public school system. The primary thing was out of the frustrations that many of us have felt based on the violence in some of our schools, such as Columbine and the Kinkley (ph.) situation in Oregon. This was simply an opportunity, hopefully, that kids in school would reflect if more than anything else. I’m saying, we’re not putting prayer on a higher pedestal or a lower pedestal than meditate and reflect. But if students would just spend one minute to reflect on who they are, what they’re doing and where they’re going. The word prayer in there was put in there so prayer would not be discriminated against.
SB 209 passed the Virginia Senate in the form introduced.
In the House of Delegates, Delegate Robert McDonnell, the House floor manager of the bill, explained that the bill was grounded in both “sound public policy” and the secular purposes “of maintaining good order and discipline, creating student focus on the activities at hand and assisting the teachers in beginning the day with a period of calm which would lead to better discipline in the classroom.” He added:
[Our students] are involved in so many activities, we expect the best out of our students. So, many of the experts certainly would agree and I think it has born[e] out in the localities that have implemented [the 1976 statute], that this certainly also helps not only with the focus but also perhaps with stress reduction in having a period of concentrated silence as they begin the school day.
The House, too, passed SB 209, and Governor James Gilmore signed it into law on April 19, 2000.[3]
In his “Sine Die” statement to the General Assembly at the conclusion of its 2000 term, Governor Gilmore praised the passage of SB 209, stating that it would “restore a sense of calm and civility in public schools by offering students a peaceful minute each day to reflect upon their studies, to collect their thoughts, or, if they so choose, to bow their heads and pray.”
On June 13, 2000, the Virginia Department of Education directed a memorandum to school division superintendents and public school principals in Virginia informing them of the changes to Virginia Code § 22.1-203 that were made through SB 209. The memorandum stated that the “legislation reflects the view that[Virginia’s] young, and society as a whole, would be well served if students were afforded a moment of quiet reflection at the beginning of each day.” The memorandum suggested, as an appropriate format for conducting a minute of silence, that the teacher say, “As we begin another day, let us pause for a moment of silence.” The same memorandum warned against permitting or tolerating “any coercion or overbearing by some students to force oth *273 ers to engage in or refrain from prayer or any other permitted activity. This time is not intended to be and shall not be conducted as a religious service or exercise.”
A little more than a week later, but before the statute’s effective date on July 1, the plaintiffs commenced this action facially challenging § 22.1-203 under the First and Fourteenth Amendments of the U.S. Constitution. They alleged in their complaint that the minute of silence statute violates the Establishment Clause because its purpose was to advance prayer in public schools. The plaintiffs sought a declaratory judgment that the statute was unconstitutional and an injunction prohibiting its enforcement.
Applying the test set forth in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the district court concluded, by order dated October 26, 2000, that the minute of silence statute “was enacted for a secular purpose, does not advance or inhibit religion, nor is there excessive entanglement with religion.” It found, accordingly, that the statute was not unconstitutional and granted summary judgment in favor of the defendants. This appeal followed.[4]
Summarizing on appeal their contention that Virginia’s minute of silence statute violates the First Amendment, the plaintiffs state:
The statute’s plain language, coupled with the contemporaneous statements, understandings and actions of the legislators who passed it and the Governor who signed it, all unambiguously indicate that the new Minute of Silence Law was intended to return voluntary prayer to the public school class room. The bill’s sponsor publicly stated the religious motives underlying the statute. Members of both the Senate and House of Delegates expressed their understanding and desire that the Minute of Silence is about prayer. The Virginia legislature purposely rejected proposed amendments to the Minute of Silence bill that would have removed the word “pray” from the statute.
They also argue that the statute is “in all relevant respects” analogous to the moment of silence statute that was held unconstitutional in Wallace v. Jaffree, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (applying the test announced in Lemon).
II
The First Amendment provides that “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.” U.S. Const, amend. I. These Religion Clauses are made applicable to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (applying the Establishment Clause to the states); Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (applying the Free Exercise Clause to the states).
Both clauses are designed to protect religious liberty. See Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 313, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) (noting that “the common purpose of the Religion Clauses ‘is to secure religious liberty’ ”) (quoting Engel v. Vitale, 370 U.S. 421, 430, *274 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962)); Michael W. McConnell, Accommodation of Religion, 1985 Sup.Ct. Rev. 1, 1 (“[R]eli-gious liberty is the central value and animating purpose of the Religion Clauses”). The Establishment Clause limits any governmental effort to promote particular religious views to the detriment of those who hold other religious beliefs or no religious beliefs, while the Free Exercise Clause affirmatively requires the government not to interfere with the religious practices of its citizens. Religion, accordingly, as distinct from other moral or philosophical systems, is singled out in the Constitution for the special protections contained in the Religion Clauses. Cf. Gillette v. United States, 401 U.S. 437, 454, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (upholding against an Establishment-Clause challenge an exemption from an otherwise generally applicable draft law that permitted exemption for those with religious, rather than moral, objection to war). Thus, the Religion Clauses must not be interpreted with a view that religion be suppressed in the public arenas in favor of secularism. See Santa Fe Indep. Sch. Dist., 530 U.S. at 313, 120 S.Ct. 2266 (noting that “[b]y no means do these commands [of the Religion Clauses] impose a prohibition on all religious activity in our public schools”); Lynch v. Donnelly, 465 U.S. 668, 673, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (stating that religion must be accommodated and that “Anything less would require the ‘callous indifference’ we have said was never intended by the Establishment Clause”); Sch. Dist. of Abington Township v. Schempp, 374 U.S. 203, 225, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (“[T]he State may not establish a ‘religion of secularism’ in the sense of affirmatively opposing or showing hostility to religion”) (quoting Zorach v. Clauson, 343 U.S. 306, 314, 72 S.Ct. 679, 96 L.Ed. 954 (1952)); Zorach, 343 U.S. at 314, 72 S.Ct. 679 (noting that if the government could not “respect[ ] the religious nature of our people and accommodate[ ] the public service to their spiritual needs,” that would be to “prefer[ ] those who believe in no religion over those who do believe”).
The Establishment Clause, on which the plaintiffs rely in this ease, prohibits governmental establishment of a religion in the sense of “sponsorship, financial support, and active involvement of the sovereign in religious activity.” Walz v. Tax Comm’n, 397 U.S. 664, 668, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). But this clause does not require total separation of Church and State. “[T]his Nation’s history has not been one of entirely sanitized separation between Church and State,” and it “has never been thought either possible or desirable to enforce a regime of total separation.” Committee for Pub. Educ. & Religious Liberty v. Nyquist, 413 U.S. 756, 760, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); accord Lynch, 465 U.S. at 673, 104 S.Ct. 1355. Thus, just as the Free Exercise Clause does not give the citizen having religious scruples an absolute right to escape the burdens of otherwise valid, neutral laws of general applicability, see Employment Div., Dep’t of Human Resources v. Smith, 494 U.S. 872, 881-82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), neither does the Establishment Clause preclude a government from “accommodating” religious scruple by, for example, voluntarily exempting those with the particular religious scruple from the burden imposed by the legislation, even though the Constitution would not, in that circumstance, oblige an accommodation, see id. at 890, 110 S.Ct. 1595. Not only is the government permitted to accommodate religion without violating the Establishment Clause, at times it is required to do so. See Hobbie v. Unemployment Appeals Comm’n, 480 U.S. 136, 144, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987) *275 (“[T]he government may (and sometimes must) accommodate religious practices”); Lynch, 465 U.S. at 673, 104 S.Ct. 1355 (stating that the Constitution “affirmatively mandates accommodation, not merely tolerance, of all religions”). And the limits of permissible accommodation are not “coextensive with the non-interference mandated by the Free Exercise Clause.” Walz, 397 U.S. at 673, 90 S.Ct. 1409; accord Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 334, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987). “This authorized, and sometimes mandatory, accommodation of religion is a necessary aspect of the Establishment Clause jurisprudence because, without it, government would find itself effectively and unconstitutionally promoting the absence of religion over its practice.” Ehlers-Renzi v. Connelly Sch. of the Holy Child, Inc., 224 F.3d 283, 287 (4th Cir.2000). It is true, however, that “[a]t some point, accommodation may devolve into ‘an unlawful fostering of religion.’ ” Amos, 483 U.S. at 334-35, 107 S.Ct. 2862 (quoting Hobbie, 480 U.S. at 145, 107 S.Ct. 1046).
The line between improper establishment and accommodation “must be delicately drawn both to protect the free exercise of religion and to prohibit its establishment.” Ehlers-Renzi, 224 F.3d at 288. But the Supreme Court has repeatedly drawn that line in a manner that has upheld a broad range of statutory accommodations against EstablishmenfiClause challenges. See, e.g., Amos, 483 U .S. at 327, 330, 107 S.Ct. 2862 (upholding Title VU’s exemption of religious employers even in the context of their non-religious activities); Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (applying Title VII’s requirement that employers reasonably accommodate their employees’ religious requirements); Gillette v. United States, 401 U.S. 437, 454, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (upholding against an Establishment Clause challenge a statutory exemption from the draft limited to individuals whose religious beliefs cause them to oppose war in any form); Zorach v. Clauson, 343 U.S. at 315, 72 S.Ct. 679 (upholding “released time” program for religious instruction of public school children). And in Lemon, the Supreme Court articulated a test to guide courts in drawing that line, a test that, while criticized over the years, remains binding precedent. See Ehlers-Renzi, 224 F.3d at 288. Under Lemon, to withstand an Establishment Clause challenge, (1) a statute must have a secular legislative purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive governmental entanglement with religion. See 403 U.S. at 612-13, 91 S.Ct. 2105.
Ill
Because this appeal comes to us in the posture of a facial, preapplication challenge, our inquiry is limited by the absence of a factual record relating to how the statute is applied. Nevertheless, on a facial challenge, we may still scrutinize a statute, based on its text, context, and legislative history, to determine whether under Lemon it has an unconstitutional purpose. See Santa Fe Indep. Sch. Dist., 530 U.S. at 312-17, 120 S.Ct. 2266. And even though we must not speculate about a statute’s application in considering the second and third prongs of the Lemon test, we can examine the available data to determine the statute’s “inevitable” effects. Id. at 316, 120 S.Ct. 2266. It is under this analytical structure, therefore, that we now turn to consider the plaintiffs’ facial challenge to Va.Code Ann. § 22.1-203.
*276 IV
In applying the first prong of the Lemon test — whether § 22.1-203 has a secular legislative purpose — we need not find that the purpose be “exclusively secular.” Lynch, 465 U.S. at 681 n. 6, 104 S.Ct. 1355; see also Wallace, 472 U.S. at 56, 105 S.Ct. 2479. In Wallace, the court noted that even though a statute may have a religious purpose, it may still satisfy the Lemon test if it also has a “clearly secular purpose.” Id. Moreover, we have observed that this first prong of Lemon is “a fairly low hurdle,” Koenick v. Felton, 190 F.3d 259, 266 (4th Cir.1999) (quoting Barghout v. Bureau of Kosher Meat & Food Control, 66 F.3d 1337, 1345 (4th Cir.1995) (Luttig, J., concurring in the judgment) (internal quotation marks omitted)), so that a statute fails on this account when “there is no evidence of a legitimate, secular purpose,” id. at 265 (emphasis added). Finally, in assessing a statute’s purpose we act with appropriate deference to the legislature. See Wallace, 472 U.S. at 74, 105 S.Ct. 2479 (O’Connor, J., concurring in the judgment) (“[I]nquiry into the purpose of the legislature in enacting a moment of silence law should be deferential and limited”).
The minute of silence statute in this case recites that in recognition of the right of pupils to the free exercise of religion and the right of pupils to be free from “pressure from the Commonwealth” to engage or not engage in any religious observation, the Commonwealth was establishing a minute of silence in each classroom. Va. Code Ann. § 22.1-203. The statute states that the minute of silence is explicitly offered to the students for any non-distracting purpose — religious or nonreligious— including prayer or meditation. See id. It provides specifically, “each pupil may, in the exercise of his or her individual choice, meditate, pray, or engage in any other silent activity which does not interfere with, distract, or impede other pupils in the like exercise of individual choice.” Id. On its face, therefore, the statute provides a neutral medium-silence — during which the student may, without the knowledge of other students, engage in religious or nonreligious activity. And its stated purposes include the allowance of both religious and nonreligious activity with the only limitation that it be conducted in a manner that preserves the silence and does not interfere with other students’ silent activity. Thus, as written in the statute, the silence is designed to be undirected and unthreat-ening; it is designed to compromise no student’s belief or nonbelief; and it is designed to exert no coercion except that of maintaining silence.
Based on this textual analysis, we conclude that the statute has at least two purposes, one of which is clearly secular and one of which may be secular even though it addresses religion. To the extent that the minute of silence is designed to permit nonreligious meditation, it clearly has a nonreligious purpose. And to the extent it is designed to permit students to pray, it accommodates religion. Even though religion is thus the object of one of the statute’s purposes, the accommodation of religion is itself a secular purpose in that it fosters the liberties secured by the Constitution. See Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 12 n. 2, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989) (plurality opinion) (Brennan, J.) (noting that a state may reasonably conclude “that religious groups generally contribute to the cultural and moral improvement of the community ... and enhance a desirable pluralism of viewpoint and enterprise”); id. at 38, 109 S.Ct. 890 (Scalia, J., dissenting); Wallace, 472 U.S. at 83, 105 S.Ct. 2479 (O’Connor, J., concurring) (stating the view that the Court ought to acknowledge openly that *277 the religious purpose in an accommodation statute “is legitimated by the Free Exercise Clause,” and that such statutes do not, solely for that reason, amount to unconstitutional “endorsements” of religion because they are consistent with the values of the Constitution).
Taking our analysis beyond the text of § 22.1-20S to the context of its enactment and its legislative history, the evidence does not alter the conclusion that is suggested by the plain meaning of the statute. The superintendent of Virginia’s schools noted that in her experience, a moment of silence has proved to be “a good classroom management tool” because it “works as a good transition, enabling students to pause, settle down, compose themselves and focus on the day ahead” making for “a better school day.” This is consistent with statements made by Senator Barry and Senator Newman. Senator Barry explained that the statute was enacted to provide an opportunity during which “kids in school would reflect if more than anything else.” He indicated that he included prayer in the list of activities permitted during the minute so that prayer would not be excluded or discriminated against. Even Senator Houck, who wanted the word “pray” to be deleted from the statute, acknowledged the statute’s secular intent. Indeed, the Department of Education’s Guidelines, which were in effect for many years before the 2000 amendments, focused most on the beneficial nonreligious purposes provided by a quiet time.[5] While there can be no doubt from the legislative history that the moment of silence was intended also to accommodate those children who wished to pray silently each day in school, that was but one of the intended purposes.
A statute having dual legitimate purposes—one clearly secular and one the accommodation of religion—cannot run afoul of the first Lemon prong, which requires only that there be a secular purpose. Indeed, the Wallace Court noted that even though a statute is “motivated in part by a religious purpose” it may still satisfy the Lemon test. 472 U.S. at 56, 105 S.Ct. 2479 (citing Abington Sch. Dist. v. Schempp, 374 U.S. 203, 296-303, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)) (Brennan, J., concurring).
Consideration of the final two prongs of the Lemon test need not detain us long because the facial challenge is mounted without evidence of the statute’s application in fact. The second prong— that the statute’s effect neither advance nor hinder religion—is clearly satisfied in this case given the statute’s facial neutrality between religious and nonreligious modes of introspection and other silent activity. See Widmar v. Vincent, 454 U.S. 263, 273, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (noting that even foreseeable benefits that religion receives from enactment of broad legislation are only “ ‘incidental’ ” and “do[ ] not violate the prohibition against the ‘primary advancement’ of religion”) (quoting Committee for Pub. Educ. v. Nyquist, 413 U.S. 756, 771, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973)). Plaintiffs argue, however, that despite the statute’s facial neutrality between silent religious expression and silent nonreligious expression, the statute’s inevitable effect—given its broad application to children, beginning in kindergarten and continuing through the twelfth grade—will be to promote prayer by creating the perception, especially from the viewpoint of young, impres *278 sionable school children, that the Commonwealth endorses prayer. In the context of a facial challenge, however, this fear is speculative at best. Despite language in Supreme Court precedent recognizing the impressionability of elementary school children and the greater threat of religious coercion attendant to religious displays in elementary schools, see, e.g., Lee v. Weisman, 505 U.S. 577, 592-93, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992); Sch. Dist. of Grand Rapids v. Ball, 473 U.S. 373, 390, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985), nothing the Court has said “suggest[s] that, when the school was not actually advancing religion, the impressionability of students would be relevant to the Establishment Clause issue,” Good News Club v. Milford Cent. Sch., — U.S. —, 121 S.Ct. 2093, 2105, 154 L.Ed.2d 45 (2001). To hold otherwise, especially in the context of a facial challenge, would result in the introduction of “a modified heckler’s veto, in which ... religious activity can be proscribed on the basis” of sincere, but utterly mistaken perceptions of state endorsement of religion. Id. at 2106. Therefore, speculative fears as to the potential effects of this statute cannot be used to strike down a statute that on its face is neutral between religious and nonreligious activity.
And the third prong — that the State not become excessively entangled with religion — is undoubtedly satisfied. If we assume that the statute will be enforced as written and that the teachers will apply it as directed by the superintendent, the teacher will simply inform the students of their statutory options during an enforced minute of silence. Its involvement in religion is negligible, left only to informing students that one of the permissible options during the moment of silence is prayer. If the students were kept uninformed of that right, they might find it necessary to ask teachers whether the allotted time might be used for prayer, increasing the potential for interactions between teachers and religiously motivated students. See Wallace, 472 U.S. at 91, 105 S.Ct. 2479 (White, J., dissenting).
In sum, in establishing a minute of silence, during which students may choose to pray or to meditate in a silent and nonthreatening manner, Virginia has introduced at most a minor and nonintru-sive accommodation of religion that does not establish religion. By providing this moment of silence, the State makes no endorsement of religion. Indeed, when instructing Virginia teachers on the implementation of the statute, State officials warned that teachers are not to permit or tolerate “any coercion or overbearing by some students to force others to engage in or refrain from prayer or any other permitted activity.” There is simply no evidence to indicate that Virginia has promoted any religion or promoted religion over nonreligion. Recognizing that the Religion Clauses of the Constitution are intended to protect religious liberty, Virginia’s minute of silence is no more than a modest step in that direction by providing a non-intrusive and constitutionally legitimate accommodation.
V
While our independent analysis of the Virginia statute under Lemon leads to the conclusion that it is a “permissible accommodation” of religion, the plaintiffs argue that this conclusion is foreclosed by the specific holding of Wallace, in which an Alabama moment-of-silenee statute was held unconstitutional. More particularly, they maintain that because the Alabama statute struck down in Wallace is indistinguishable from the Virginia statute under consideration here, Wallace is “disposi-tive.” For the reasons that follow, we disagree.
*279 A fair reading of Wallace compels the conclusion that its holding was based on the unique facts presented in that litigation and that its decision did not categorically prohibit moment-of-silence statutes. The Supreme Court in Wallace distinguished its case as “quite different from merely protecting every student’s right to engage in voluntary prayer during an appropriate moment of silence during the schoolday/’ 472 U.S. at 59, 105 S.Ct. 2479, a passage that was cited with approval in the Court’s decision in Santa Fe Indep. Sch. Dist., 530 U.S. at 313, 120 S.Ct. 2266. The outcome in Wallace was the culmination of Alabama’s attempt to overturn Everson v. Board of Educ., 330 U.S. 1, 14-16, 67 S.Ct. 504, 91 L.Ed. 711 (1947), which rendered the Establishment Clause applicable to the States through the Fourteenth Amendment. As part of its campaign of defiance, Alabama enacted three statutes: Section 1601-20, enacted in 1978, which authorized a one-minute period of silence in all public schools “for meditation”; Section 16-1-20.1, enacted in 1981, which authorized a period of silence “for meditation or voluntary prayer”; and Section 16-1-20.2, enacted in 1982, which authorized “willing students” to be lead by authorized teachers in a prescribed prayer to “Almighty God ... the Creator and Supreme Judge of the world.”
At the preliminary-injunction stage, the district court concluded that the meditation statute, the 1978 enactment, was not objectionable but that the other two statutes were invalid because, as a factual matter, “the sole purpose of both was ‘an effort on the part of the State of Alabama to encourage religious activity.’ ” Wallace, 472 U.S. at 41, 105 S.Ct. 2479 (quoting Jaffree v. James, 544 F.Supp. 727, 732 (S.D.Ala.1982)). With respect to the 1981 enactment, which authorized meditation or prayer, the district court found that the statute failed Lemon’s first prong because the prime sponsor of the legislation testified under oath that the legislation was promoted and passed only in an “effort to return voluntary prayer to our public schools.” Id. at 43, 91 S.Ct. 2105. The court also found that Alabama teachers had already begun leading their students in collective prayers, over communicated objections of the plaintiff children. See Jaffree v. Bd. of Sch. Comm’s of Mobile County, 554 F.Supp. 1104, 1107-08 (S.D.Ala.1983).
Reviewing this record, the Supreme Court observed that it “reveals that the enactment of § 16-1-20.1 [the 1981 enactment that provided for meditation or prayer] was not motivated by any clearly secular purpose — indeed, the statute had no secular purpose.” Wallace, 472 U.S. at 56, 105 S.Ct. 2479 (emphasis in original). The lack of secular purpose for the challenged legislation was shown by the uncontrovert-ed legislative history of the statute as well as live testimony before the trial court. Not only did the Governor of Alabama testify that the State’s intent was to have prayer as part of daily classroom activity, but the State also made no claim that the statute was enacted to accommodate the. free exercise of religion until late in the litigation. The Supreme Court reached the conclusion that the 1981 enactment had an unlawful purpose also because of the language of the two other statutory provisions involved in the litigation, the 1978 enactment (providing for meditation) and the 1982 enactment (providing for prayer to Almighty God). While the 1982 enactment had a “wholly religious character” that was “plainly evident from its text,” id. at 58, 105 S.Ct. 2479, the “wholly religious character” of the 1981 enactment was more subtle but no less certain when its language was compared to that of the 1978 predecessor (providing only for meditation). Thus, the Supreme Court noted *280 that “while the [legislative intent] merely [to] protect every student’s right to engage in voluntary prayer during an appropriate moment of silence during the school day” was constitutionally unobjectionable, the 1978 statute, providing for meditation, had already protected that right, and thus, the enactment of the 1981 statute, providing for meditation and prayer, did not, and could not, as a logical matter, further “any secular purpose that was not fully served by [the 1978 enactment].” Id. at 59, 105 S.Ct. 2479. Accordingly, only two conclusions were consistent with the passage of the 1981 enactment: Alabama enacted the statute either “(1) ... to convey a message of state endorsement and promotion of prayer; or (2) ... for no purpose.” Id. at 59, 105 S.Ct. 2479. Refusing to attribute irrationality to the Alabama legislature, the Supreme Court concluded that the statute was enacted for a rational, but plainly unlawful purpose.
In short, the Supreme Court observed that “the State did not present evidence of any secular purpose,” id. at 57, 105 S.Ct. 2479, and the purpose as singularly religious was confirmed from “consideration of the relationship between the statute at issue and the two other measures that were considered in the case,” id. at 58, 105 S.Ct. 2479. The Court made clear, however, that enacting a statute solely for a religious purpose is “quite different from, merely protecting every student’s right to engage in voluntary prayer during an appropriate moment of silence during the school day.” Id. at 59, 105 S.Ct. 2479 (emphasis added).
This admonition by the Wallace Court that its holding did not reach to moment of silence statutes that had both secular and religious purposes was confirmed in the separate concurring opinions of Justices Powell and O’Connor. Justice Powell agreed that the evidence in the record indicated that the Alabama moment of silence statute was enacted solely for a religious purpose, rendering unnecessary any analysis under the other two prongs of the Lemon test. But he added, “Although we do not reach the other two prongs of the Lemon test, I note that the effect of a straightforward moment-of-silence statute is unlikely to advance or inhibit religion ... nor would such a statute foster an excessive government entanglement with religion.” Id. at 66, 105 S.Ct. 2479 (Powell, J., concurring) (internal quotation marks and citations omitted). Similarly, Justice O’Connor noted that a moment of silence statute is not inherently religious and that during the moment of silence a student who objects to prayer is left to his or her own thoughts and not compelled to listen to the prayers or thoughts of others. She concluded, “It is difficult to discern a serious threat to religious liberty from a room of silent, thoughtful schoolchildren.” Id. at 73, 105 S.Ct. 2479 (O’Connor, J., concurring in the judgment). Justice O’Connor’s concurrence in Wallace also rejects one of the arguments advanced by plaintiffs in this litigation, namely, that Virginia’s use of the word “pray” is dispos-itive of an intent to endorse prayer. Wallace, 472 U.S. at 73, 105 S.Ct. 2479 (“Even if a statute specifies that a student may choose to pray silently during a quiet moment, the State has not thereby encouraged prayer over other specified alternatives.”).
The factual record of the case before us stands in stark contrast to the one presented to the Supreme Court in Wallace. First, there is no evidence that the Commonwealth of Virginia acted in open defiance of federal constitutional law. To the contrary, its debates reflected serious consideration of relevant Supreme Court precedents and concern that it act constitutionally in enacting its proposed statute. Indeed,, rather than defy the Supreme *281 Court by seeking to conduct an end run around its precedents, the Virginia House of Delegates passed a resolution requesting that Congress initiate a constitutional amendment.
In addition, the legislators clearly debated and acknowledged both religious and secular purposes for the proposed statute, describing the benefits of a minute of silence even for students who would not use the allotted time to pray.
Finally, unlike the Alabama teachers who admitted to leading their students in religious chants and prayers without even waiting for the passage of a State law authorizing such conduct, the Virginia teachers were operating under cautious guidelines circulated five years earlier. Moreover, after passage of the 2000 amendment, the superintendent of schools in Virginia directed a memorandum to all teachers, admonishing them not to permit the minute of silence to become a religious observance. There is no evidence in this record that Virginia teachers have used the minute of silence, or any other occasion, to lead their students in collective prayer, as was the case in Wallace.
The plaintiffs point to the fact that the 2000 amendments to Virginia’s statute made the minute of silence mandatory throughout the State, therefore rendering it coercive. But we can find no material distinction between the 1976 version of § 22.1-203, in which a political subdivision was authorized to impose a minute of silence and the current statute where the State itself imposed the minute of silence. Both are mandatory minutes of silence for the students implicated, but neither is coercive in that the affected students are left to choose how they will use the minute of silence.
In short, the holding in Wallace is clearly distinguishable. Indeed, the Supreme Court went out of its way to distinguish that case from the one now before us.
VI
The Supreme Court has ruled clearly that state-sponsored prayer conducted in public schools violates the Establishment Clause of the First Amendment and that student-sponsored prayer in public schools may violate it because, in the coercive context of the classroom, a vocal prayer infringes the religious liberty of students who would choose not to participate. A moment of silence, however, lacks this dis-positive element of coercion. See Santa Fe Indep. Sch. Dist., 530 U.S. at 313, 120 S.Ct. 2266; Wallace, 472 U.S. at 72, 105 S.Ct. 2479 (O’Connor, J., concurring in the judgment). Establishing a short period of mandatory silence does not ipso facto amount to the establishment of anything but silence.
The minute of silence established in Virginia by § 22.1-203 for each public school classroom is designed to provide each student at the beginning of each day an opportunity to think, to meditate, to quiet emotions, to clear the mind, to focus on the day, to relax, to doze, or to pray — in short, to provide the student with a minute of silence to do with what the student chooses. And just as this short period of quiet serves the religious interests of those students who wish to pray silently, it serves the secular interests of those who do not wish to do so. Because the state imposes no substantive requirement during the silence, it is not religiously coercive. Neither the teacher nor any student will know how any other student uses the time because it is, fortunately, inherent in the human constitution that what transpires in the mind cannot be known by others.
The statute’s use of the word “pray,” in listing an unlimited range of mental activities that are authorized dur *282 ing the minute of silence, cannot by itself be a ground for finding the statute unconstitutional. Indeed, to require a ban on the use of religiously related terms would manifest a hostility to religion that is plainly inconsistent with the religious liberties secured by the Constitution.
Accordingly, after considering the text of the statute, its legislative history, and the facts surrounding its enactment, we hold that Virginia Code Annotated § 22.1-203 (Michie 2000) does not violate the Establishment Clause of the First Amendment. The judgment of the district court is therefore

AFFIRMED.

. The following shows how Va.Code Ann. § 22.1-203 was amended in 2000:
In order that the right of every pupil to the free exercise of religion be guaranteed within the schools and that the freedom of each individual pupil be subject to the least possible pressure from the Commonwealth either to engage in, or to refrain from, religious observation on school grounds, the school board of each school division is authorized to shall establish the daily observance of one minute of silence in each classroom of the division.
Where During such one-minute period of silence is instituted, the teacher responsible for each classroom shall take care that all pupils remain seated and silent and make no distracting display to the end that each pupil may, in the exercise of his or her individual choice, meditate, pray, or engage in any other silent activity which does not interfere with, distract, or impede other pupils in the like exercise of individual choice.

The Office of the Attorney General shall intervene and shall provide legal defense of this law.

(Italics show additions and strike-throughs show deletions).

. The parties disagree whether statements to the press are admissible as exceptions to the hearsay rule. We do not decide this question but include this statement only for the sake of completeness. We do not, however, believe that its inclusion materially adds or detracts from the views of legislators contained in the legislative record.

. The same General Assembly that enacted SB 209 also enacted House Joint Resolution 71, which consisted of a request to Congress that it take steps to amend the federal Constitution so as to permit voluntary school prayer of the type that had been found unconstitutional by the Supreme Court in its landmark decision of Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962).

. On August 31, 2000, the district court denied the plaintiffs' motion for a preliminary injunction to prohibit enforcement of the statute. By order dated September 5, 2000, we denied the plaintiffs' emergency motion for injunction pending appeal. While the appeal from the denial of plaintiffs' motion for a preliminary injunction is also before us, that appeal is resolved by our decision in the appeal on the merits, taken from the summary judgment entered in favor of the defendants on October 26, 2000.

. In their argument before the district court, the plaintiffs themselves acknowledged, "[I]t's a good thing for children to start the day with some reflection. It is probably a very good thing.... [I]t would help ... every ... child to do that.”